THE PRUDENTIAL SOCIETY, INC., Respondent, *v*. GEORGE A. RAY, Appellant.

Fourth Department, January 2, 1924.

Negligence — action against husband to recover amount loaned to wife who had been adjudged insane — wife at time of loan made by plaintiff on jewelry was living with husband who had been appointed committee of her person and property — wife had been discharged from hospital and was not required to be restrained — husband not liable.

In an action to recover the amount of a loan made by the plaintiff to defendant's wife on the security of jewelry, it appeared that prior to the loan in question defendant's wife had been adjudged an incompetent person and the defendant had been appointed committee of her person and property; that prior to the defendant's appointment as committee he knew that his wife had been in the habit of pawning articles of jewelry and giving away her clothing; that some time previous to the transaction in question she was discharged from a hospital and the husband was advised not to restrain her but to treat her as a normal person, and for some time before the loan made by the plaintiff she had been living with her husband and had been apparently normal; that without the knowledge of her husband she secured the loan in question from the plaintiff on the security of a diamond ring which had been presented to her as a gift by her husband, which gift was in keeping with their station in life; that the defendant replevied the ring from the plaintiff and thereafter this action based on the theory of negligence of the defendant was commenced.

*Held*, that the plaintiff cannot recover on the theory of negligence since the defendant has not omitted any duty that he owed to the plaintiff and no act or omission on the part of the defendant was the proximate cause of plaintiff's loss. The plaintiff was bound to know that at the time it made the loan to the wife she had been adjudged an incompetent person, incapable of making a binding contract, and there was nothing in her condition immediately preceding the transaction which reasonably would have led the defendant to believe that she should not be treated as a normal person as he had been advised to do by the physicians who had discharged her from the hospital.

CROUCH and SEARS, JJ., dissent, with opinion.

APPEAL by the defendant, George A. Ray, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 25th day of April, 1922, affirming a judgment of the City Court of Buffalo in favor of the plaintiff.

*Coatsworth & Diebold* [*Charles Diebold, Jr.*, and *Edward L. Jung*, of counsel], for the appellant.

*Desbecker, Fiske, Newcomb & Block* [*Walter C. Newcomb* of counsel], for the respondent.

CLARK, J.:

Plaintiff is a foreign corporation doing business in the city of Buffalo and defendant is a resident of that city

Defendant's wife, Mrs. Vera B. Ray, was duly adjudged an incompetent person on the 24th day of December, 1914, and defendant was appointed committee of her person and property, and he thereupon qualified as such committee and entered upon the discharge of his duties. The proceedings which resulted in the appointment of defendant as such committee appear to have been regular, and were notice to all the world that the adjudged incompetent person was incapable of making a binding contract. (*Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; *McCarthy* v. *Bowling Green Storage & Van Co.*, 182 App. Div. 18.)

Prior to defendant's appointment as such committee he knew that his wife had been in the habit of pawning articles of jewelry and giving away her clothing, but for some time previous to her dealings with plaintiff she had been living with her husband and had been apparently normal, and had attended to her ordinary duties in managing her husband's household.

On the 25th day of December, 1919, defendant gave to his wife a valuable diamond ring as a Christmas present. She was living with her husband and he was caring for her, and such a gift was a reasonable one, considering their relationship and station in life.

On the 2d day of April, 1920, Mrs. Ray applied to plaintiff, a pawnbroker, with offices in the city of Buffalo, for a loan on her diamond ring, and obtained $200 at that time, and within two or three days obtained an additional $100 on the same security, and within a week thereafter obtained an additional $200 from plaintiff on the same security, making in all $500.

Prior to these transactions plaintiff had never had dealings with defendant's wife, and she was a stranger to its Buffalo manager. Just before this time defendant's wife left her home and was gone about three weeks, and was evidently on a protracted debauch. Finally defendant got track of her in Buffalo and brought her home, and after that learned of the fact that she had pawned her ring to the plaintiff.

Defendant thereupon demanded of plaintiff the return of the ring, which was refused unless defendant would return the money plaintiff had loaned on it. This being refused, defendant began an action to replevy the ring. The case was tried and defendant recovered the property, together with forty-three dollars and twenty cents costs. Then plaintiff began this action to recover the amount of money it had advanced defendant's wife on the ring, with the costs it had been obliged to pay in the replevin action.

The theory on which plaintiff brought this action was that

32

defendant knowing the habits of his wife to pawn her jewelry and give away her clothing, negligently, recklessly and carelessly intrusted to his wife this valuable diamond ring, and permitted her to go at large.

I cannot see where defendant omitted any duty that he owed to the plaintiff. His wife was living with him, for some time she had been in an apparently normal condition, and was attending to whatever duties were required of her as his housewife, and his giving to his wife a Christmas present of a diamond ring, which he could well afford, was quite in keeping with their circumstances and station in life.

Although his wife had been declared an incompetent person, and he was the committee of her person and property her condition was not such as required her confinement, and she was in no way a menace to the public. Indeed, she had been discharged from the institution where she had been confined for a period, the authorities declining to keep her longer, and the physicians in charge of said institution had advised defendant not to keep his wife under restraint, but to treat her as a normal person.

The theory on which this action was brought was based wholly upon the alleged negligence of defendant.

I cannot see where any act or omission of defendant was the proximate cause of plaintiff's loss. There was no act or omission of defendant which directly led to plaintiff's transactions with defendant's wife. Defendant would not be responsible to plaintiff on the theory of negligence unless the act of which plaintiff complains flowed directly and naturally from defendant's alleged misconduct.

While a wrongdoer is responsible for the natural and proximate consequences of his misconduct, and also such as might reasonably have been apprehended, a wrongdoer is not liable for a remote cause, and he is only liable when the injury resulting flows directly from his omission. (*Boyce* v. *Greeley Square Hotel Co.*, 228 N. Y. 106, 112; *Potorik* v. *State of New York*, 111 Misc. Rep. 325.)

There was nothing in the condition of defendant's wife when she left her home just prior to the transactions with plaintiff to have lead defendant to anticipate that she would leave home or pawn her ring. For a considerable time she had been apparently normal, and was being treated by defendant as a normal person under the explicit directions of the physicians who had discharged her from the institution in which she had been last confined, and defendant was justified in relying on the judgment of the physicans in regard to the manner in which his wife was to be treated. (*Ballinger* v. *Rader*, 153 N. C. 488.)

That was an action for wrongful death against the father and

mother of an insane man who killed a woman. The action was brought by the administrator of the murdered woman's estate, and at the close of the evidence the court directed a nonsuit, and plaintiff appealed. The Supreme Court of North Carolina affirmed the judgment of nonsuit, saying in its opinion:

" The evidence fails to show that the defendants were in any way responsible for the unfortunate killing of plaintiff's daughter by their insane son, Lonnie W. Rader. The son had been regularly discharged by the authorities of the hospital, upon whom the law imposed the duty of determining whether or not a patient was safe to be at large. These defendants had a right to rely upon the judgment of the hospital authorities, unless there had been a subsequent change in their son's condition, which is not shown.

" The homicide was not the natural and logical consequence of Lonnie W. Rader being at large  *  *  *  The discharge of Rader, his absence from the hospital, his presence in Catawba County, and at church on the day of the homicide was a mere condition which accompanied, but did not cause the injury. Upon a review of the evidence we are of opinion that his Honor did not err in holding that it was not sufficient to be submitted to the jury in the support of an allegation that the homicide was caused by the negligence of the defendants."

In this North Carolina case the man who committed the homicide had been confined in an institution for a time and had been discharged, and was permitted to be at large.

In the instant case defendant's wife had been confined in an institution for a time, but had been discharged by the physicians in charge with explicit instructions to defendant not to restrain his wife, but to treat her as a normal person.

Here as in the North Carolina case defendant had a right to rely upon the judgment of the hospital authorities, there being no subsequent change in the condition of his wife until she suddenly left her home just before pawning her ring to this plaintiff.

The evidence did not justify a finding that defendant was negligent, or that he had been remiss in any duty he owed to the plaintiff. It is unfortunate for plaintiff that it dealt with an adjudged incompetent person, but after defendant's wife had given plaintiff's manager her name and address, he took no steps to investigate her situation and circumstances, which it would seem would have been advisable.

The theory on which the action was brought and tried being that defendant was negligent, and such negligence not being established by the evidence, the order of the Special Term and

the judgment of the City Court of Buffalo should be reversed on the law, and the complaint dismissed, with costs.

All concur, except SEARS and CROUCH, JJ., who dissent in an opinion by CROUCH, J.

CROUCH, J. (dissenting):

Plaintiff says that defendant, being committee of the person and property of Vera B. Ray, an adjudged incompetent, negligently intrusted to her custody a diamond ring, whereby plaintiff was damaged to the amount which it advanced in good faith to said incompetent upon the security thereof. The answer is a denial.

Vera B. Ray is the wife of defendant. In December, 1914, upon the petition of defendant, she was adjudged incompetent by reason of habitual drunkenness. The proof in that proceeding showed that " on a great many occasions " she had pawned or given away her jewelry and wearing apparel in order to obtain drink. She had been drinking to excess for five years prior to adjudication, and had been during that period an inmate in five different institutions for varying lengths of time. Subsequent to adjudication and down to April, 1920, she had been confined in State hospitals and private institutions on five different occasions. She was released from the latest one in March, 1920. In the intervals she lived in defendant's home under the charge of attendants with instructions from the doctors to treat her so far as possible as a normal person. During that period and presumably in those intervals she had on three or four occasions pawned articles of jewelry and clothing. Defendant had on each occasion promptly replevied them. It is fair to assume that he had learned there was no defense to such actions. On December 25, 1919, defendant bought a diamond ring, valued at $1,000, and gave it to his incompetent wife. On April 2, 1920, she pledged the ring with plaintiff as security for a loan of $200. On April fifth and April twelfth following she obtained further advances of $300, making a total loan of $500. Between those dates she was away from home, her whereabouts unknown to defendant. On the three occasions when she obtained loans from plaintiff, her appearance and conduct were apparently normal and rational. She gave plaintiff her correct name and address. Plaintiff made no investigation of her status or of her title and right to possession of the ring. Defendant subsequently recovered the ring under a judgment in replevin.

The present action was tried before a judge of the City Court of Buffalo. Plaintiff had judgment which was affirmed on appeal by the Special Term of the Supreme Court in Erie county.

I disagree with the conclusion reached by the majority on the appeal here. My reasons are, briefly, as follows:

To constitute actionable negligence there must be (1) a duty to the plaintiff to observe care, (2) a breach of such duty, and (3) injury suffered in consequence.

1. Whether the defendant owed a duty to the plaintiff here to observe care was at least a question of fact. The existence of such a duty is and has been time out of mind determined by the test of whether a prudent man would under the circumstances have foreseen harm to the plaintiff from a lack of reasonable care in his conduct. If he would, a duty was owing; otherwise not. (*Wittenberg* v. *Seitz*, 8 App. Div. 439; *Heaven* v. *Pender*, L. R. 11 Q. B. D. 503; *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382, 389.)

The tendency of the law has been to substitute a standard of specific acts and omissions for the " featureless generality " of the prudent man test. By statutes and by decisions in familiar and recurring cases, definite standards have come into existence. (Holmes, The Common Law, pp. 111–112.) In such cases the court says as matter of law that a defendant owed a duty to do this, that, or the other thing, to give adequate warning of the approach of a train, to look before crossing a street, to pass an approaching vehicle on the right, etc. But the general test still exists and is applicable in a doubtful case. It may not be said here as matter of law that defendant was under no duty to observe care.

2. If that duty was owing to the plaintiff by the defendant, then it was for the trier of fact to determine whether or not, under all the circumstances, defendant had observed that duty.

3. Whether the injury suffered by plaintiff was the legal consequence of defendant's negligence was likewise a question of fact.

A wrongdoer is responsible for the natural and proximate consequences of his misconduct; and what are such consequences must generally be left to the jury. (*Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264, 281, 282.)

The proximate consequences are those which ought to have been foreseen by a reasonably prudent man. (*Perry* v. *Rochester Lime Co.*, 219 N. Y. 60, 63; *Hall* v. *New York Tel. Co.*, 214 id. 49, 52.)

The reasonable and the probable seem to be in this jurisdiction the bounds of legal causation. (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 53, 54.) But within those bounds a jury might very well find that a reasonably prudent man, knowing what defendant here knew of his wife's tendencies, of the methods of the pawnbroking business, and of the legal consequences of those methods, would have foreseen, as likely to happen, the precise harm

which came to plaintiff. (See Holmes, Collected Legal Papers, p. 190.)

4. Whether plaintiff exercised the requisite care for its own protection under all the circumstances, was likewise a question of fact.

Judicial notice may be taken of the general character and purposes of the pawnbroking business. The transactions are immediate and generally under the urge of dire necessity. In the absence of anything to put the broker on inquiry, failure to investigate the title is not necessarily negligence.

While the facts here are novel, the principle involved is not. I think it was applied by this court in *Schulz* v. *Morrison* (172 App. Div. 940, affg. 91 Misc. Rep. 250), and in *Tarbox* v. *Thompson* (191 App. Div. 933) (parent negligent in permitting child under eighteen years of age to use automobile, causing injury to plaintiffs). See, also, *Binford* v. *Johnson*, 82 Ind. 426 (defendant sold pistol cartridges to boys, knowing dangerous character of articles, and that boys were unfit to have them; plaintiff's intestate killed by discharge of pistol in hands of a younger brother who had found it on the floor); *Cluthe* v. *Svendsen*, 9 Ohio Dec. 458 (father may be liable for death of plaintiff's young daughter, killed by defendant's demented and dangerous son, seven years old, if he knew son's condition, and knowingly permitted him to be at large unwatched); *Meers* v. *McDowell*, 110 Ky. 926 (father liable for permitting an incompetent son to handle loaded gun, if he knew or should have known the danger in the exercise of ordinary care); *Theroux* v. *Carrier*, 21 Quebec Sup. Ct. 156; *Whitesides* v. *Wheeler*, 158 Ky. 121 (substantially to the same effect as foregoing cases; insane sons of full age living at home caused injuries to plaintiffs); and *Kusah* v. *McCorkle*, 100 Wash. 318 (sheriff failed to search insane prisoner, who stabbed plaintiff, a fellow prisoner; for the jury under the facts).

A $1,000 diamond ring in the hands of defendant's wife was an instrument as potentially dangerous to the property of pawnbrokers as were the automobiles, guns, pistols and knives in the above cases to the persons of those injured thereby.

The order of the Special Term and the judgment of the City Court of Buffalo should be affirmed.

SEARS, J., concurs.

Judgment [order] of Special Term and judgment of Buffalo City Court reversed on the law and complaint dismissed, with costs in all courts to the appellant.