ETHEL SIMMONS CHADDOCK, Plaintiff, v. LAWRENCE CHADDOCK, Defendant.

Supreme Court, Onondaga County, November 28, 1927.

**Husband and wife — annulment of marriage — complaint alleging lunacy amended to charge fraud — defendant was adjudged incompetent fourteen years before marriage to plaintiff — complaint dismissed.**

Plaintiff, who began an action for the annulment of her marriage to defendant on the ground that he was a lunatic on the occasion of said marriage, had the right to thereafter amend her complaint so as to change the basis of her action to one for annulment on the ground of fraud in that defendant falsely represented to her that he was of sound mind and body and that there was nothing in his past life which would tend to make their married life unhappy.

However, plaintiff's complaint must be dismissed where the evidence shows that defendant was adjudged an incompetent fourteen years before he married the plaintiff, since an adjudged incompetent is not only incapable of making a binding contract but is likewise incapable of deception and of the intent to defraud which underlie plaintiff's action for fraud.

The fact that lunacy lies at the root of the action based on fraud prohibits the plaintiff from maintaining the action in that form.

ACTION to annul marriage on the ground of fraud.

*Lionel Grossman*, for the plaintiff.

*Henry E. Dodd*, guardian ad litem and attorney, for the defendant.

DOWLING, WILLIAM F., J. Plaintiff and defendant were married at Rochester, N. Y., January 27, 1927, after a courtship of two

months. They cohabited following the marriage for two weeks, and then separated. Following the separation the defendant was committed to the St. Lawrence State Hospital for the Insane, located at Ogdensburg, N. Y. After his commitment, and on April 15, 1927, the plaintiff instituted this action, under the provisions of section 1137 of the Civil Practice Act, to annul said marriage on the ground that defendant was a lunatic on the occasion of said marriage. Henry E. Dodd, an attorney of Syracuse, N. Y., was appointed guardian *ad litem* for defendant, who served the usual guardian *ad litem's* answer submitting defendant's rights to the protection of the court.

After issue was joined, plaintiff apparently became aware of the decision of *Hoadley* v. *Hoadley* (244 N. Y. 424), which holds that a marriage voidable for lunacy may not be annulled at the suit of the spouse who is sane.

Thereafter, and on May 10, 1927, in order to circumvent the holding in the *Hoadley Case* (*supra*), plaintiff served an amended complaint, praying to have said marriage annulled on the ground of fraud, in that defendant falsely represented he was sound of mind and body and that there was nothing in his past life, if known by the plaintiff, which would tend to make their married life unhappy, where, as matter of fact, defendant, for many years previous to said marriage, had been, at the time thereof was, and since has been suffering from a form of hereditary incurable insanity known as dementia præcox; that she was unaware of that fact and did not discover the truth thereof until two weeks following said marriage, when she ceased to live or cohabit with the defendant.

Upon the trial there was sufficient evidence to establish the fact that since the year of 1913 to the date of trial the defendant has suffered from dementia præcox and is now incurable. In the year 1913 defendant was adjudged insane in the State of Florida as suffering from said disease and was " delivered to his father for care, maintenance and treatment " which means that the father was appointed his committee. At some time he came to Syracuse from Florida, where he met the plaintiff. After a hasty courtship of two months, he proposed marriage to her and was accepted. I doubt very much if the plaintiff inquired into the mental condition of the defendant before accepting his offer of marriage. I am more inclined to the view that she thought him a good prospect and lost no time in taking advantage of the opportunity to wed him. Her testimony, wherein she outlined the queries made by her as to the mental and physical health of the defendant before consenting to marry him, smacks too much of the language of the decisions in point to be convincing. Whether

or not the defendant falsely represented his mental condition, as charged, is not of moment in view of the disposition which must be made of this case. In any event, he failed to disclose the facts respecting his mental and physical condition when there was a duty to speak the truth thereof resting heavily upon him. A fraudulent concealment of material facts where there is a duty to speak, is an actionable offense.

In the first place, plaintiff could properly amend her complaint so as to change the basis of her action from annulment on the ground of lunacy to annulment on the ground of fraud, as the action in either case is one for annulment. In *Robertson* v. *Robertson* (9 Daly, 44) it was held that a separation case could not be converted into an action for a divorce. The court said (at p. 53): " The action for absolute divorce is entirely different in every respect from an action for a separation. They have no relation one to the other, . and proceed under entirely different divisions of the statute law. If an amendment of this kind can be allowed, then an action for specific performance can be amended into an action for absolute divorce." It is to be noted that a separation action is for affirmance, and a divorce action is for a dissolution, of the marriage contract, while an annulment action, in any form, is for an avoidance of the contract.

Section 244 of the Civil Practice Act provides as follows: " Amendment of course. Within twenty days after a pleading, or the answer or reply thereto is served, or at any time before the period for answering it expires, or within twenty days after the service of a notice of a motion addressed to the pleading, the pleading may be once amended by the party, of course, without costs and without prejudice to the proceedings already had."

In *Deyo* v. *Morss* (144 N. Y. 216) the original complaint was based on fraud and the amended complaint on a statute wherein the element of fraud had no place. The court said (at p. 219): " The causes of action in the two complaints were distinct. The original complaint was based on fraud, and the amended complaint on the statute, and in such an action the element of fraud has no place. The General Term reversed the order of the Special Term, which denied a motion in behalf of the defendants to strike out the amended complaint, made on the ground that it set up a new and different cause of action from that in the original complaint. The ground of the reversal seems to have been based on the view that the power of the court to authorize an amendment of a complaint before trial, does not extend to an amendment which changes the cause of action.

" We think the settled practice is opposed to the rule declared

by the General Term. Whether an amendment of a pleading shall be allowed in such a case is, in general, a matter of discretion in the court. The General Term has the right to review the exercise of such discretion by the Special Term, and its order made in the exercise of this power of review could not be reviewed here. But the stipulation, by its true construction, authorized such amendment as the court had power to grant, and the case, therefore, depends on the power of the Special Term to authorize an amendment before trial of a complaint, so as to permit a substitution of a different cause of action from that originally alleged. We think this question was, in principle, determined in the case of *Brown* v. *Leigh* (49 N. Y. 78), where it was held that, under sec. 172 of the former Code, which permitted a pleading to be once amended by a party, of course and without costs, an amendment of a complaint which changed the cause of action and substituted another cause of action belonging to a different class was authorized."

The summons in question (aside from the unnecessary indorsement, the complaint having been served with it [Rule 53, subd. 10], that the action is for annulment on the ground of insanity) is appropriate to either form of action. In *Mussinam* v. *Hattan* (23 Civ. Proc. 400) the court said (at p. 403): " The ground, however, that the proposed amended complaint should not stand for the reason that it sets up a new cause of action, is not tenable; for, under section 542 of the Code, the plaintiff may amend by alleging an entirely new cause of action, because this section contains no restriction as to the nature of the amendments (*Robertson* v. *Robertson*, 9 Daly, 44–52; *Divine* v. *Duncan*, 2 Abb. N. C. 328); but all the causes set forth in the amended complaint should be of the same class and of a class to which the summons is appropriate (*Brown* v. *Leigh*, 49 N. Y. 78)."

In view of the holding in these cases, I think the amendment was proper. In the second place, the fact that lunacy lies at the root of the action based on fraud, the plaintiff is prohibited from maintaining this action in that form. In the *Hoadley Case* (*supra*) the court said (at p. 432): " The Legislature has said that the marriage may be annulled at the suit of relatives or friends, or at the suit of the incompetent after reason has been restored. This was declaratory or nearly so of common-law rules (19 Halsbury Laws of England, § 826, and cases there cited). It has not said that the marriage may be annulled at the suit of the party who is free from disability."

In 26 Corpus Juris, page 1060, section 3, subdivision 2, actual fraud is defined as " intentional fraud;" it consists in deception, intentionally practiced to induce another to part with property

or to surrender some legal right and which accomplishes the end designed. In actual or positive fraud, the essential elements are intention to defraud and deception. (*Costello* v. *Costello*, 209 N. Y. 252, 258.) An adjudged incompetent (like the defendant) is incapable of making a binding contract. (*Prudential Society, Inc.*, v. *Ray*, 207 App. Div. 496, 497.) If such an incompetent is incapable of making a binding contract, he is likewise incapable of deception and of the intent to defraud which underlie a fraud action.

It has been held that a lunatic is liable for all his tortious actions except those wherein the element of malice, therefore intention, is involved. (*Williams* v. *Hays*, 143 N. Y. 442, 446.) It must, therefore, necessarily follow that the plaintiff, assuming for the moment defendant made the fraudulent representations as charged, he being an adjudged lunatic at the time he is alleged to have made them, cannot maintain this action. Were the rule otherwise, it would impose upon " a person already visited with the inexpressible calamity of mental obscurity an obligation to observe the same care and precaution respecting the rights of others that the law demands of one in the full possession of his faculties." (Cooley Torts, 100; *Williams* v. *Hays, supra.*)

Plaintiff's marriage is both an unfortunate and an unhappy one, but in the present state of the law, the courts are powerless to assist her. Her plight should serve as a warning to those contemplating hasty marriages with strangers. The rule of *caveat emptor* still has some application to the parties contracting marriage.

In view of the foregoing, I must conclude that plaintiff, as matter of law, cannot maintain this action. Her complaint is dismissed, without costs. Findings and judgment accordingly.