## STATE EX REL. v. DISTRICT COURT SIXTH JUDICIAL DISTRICT
(No. 1776; July 26, 1932; 13 Pac. (2d) 568)

For the relator there was a brief and oral argument by *W. L. Walls,* of Cheyenne, Wyoming, and *J. R. Moran* and *J. P. Akolt,* of Denver, Colorado.

438

For respondents there was a brief by *Matson & Swainson,* of Cheyenne, Wyoming, *L. E. Armstrong,* of Rawlins, Wyoming, *C. Leonard Smith,* of Denver, Colorado, *John Dillon* and *C. R. Ellery,* both of Cheyenne, Wyoming, and oral argument by *Messrs. Ellery, Matson, Dillon* and *Armstrong.*

440

BLUME, Justice.

This is an action for a writ of prohibition. The facts, briefly stated, in so far as material herein, are as follows:

On May 14, 1929, a petition was filed in the District Court of Converse County by Merrico Royalties Company, a Wyoming corporation, as plaintiff, against the Merritt Oil Corporation, a Maine corporation, as defendant. It was alleged in the petition that plaintiff and defendant entered into a written contract on July 27, 1917; that under the implied covenants contained therein, the defendant, the Merritt Oil Corporation, agreed to properly protect certain oil lands, described in the petition, against drainage and to prosecute and perform exploration and development work thereon for the benefit of both parties; that the defendant violated these implied covenants in five particulars, mentioned in five different causes of action, and judgment for damages was asked in the sum of $775,000. The contract of July 27, 1917, relied on in the petition, and attached thereto, is, in brief, as follows: It recites that Ed. J. Wells and eleven others were the owners of six and two-thirds per cent of the royalties of oil and gas in the lands described in the petition, and that the Merrico Royalties Company had succeeded thereto; that the Merritt Oil Corporation was in possession of and de-

veloping these and other lands; that the parties desired to have the latter conduct the operations thereon as a unit, and it was, accordingly, agreed that it, the Merritt Oil Corporation, should pay to the Merrico Royalties Company its proportion of the royalties in cash during each month.

On application of the Merritt Oil Corporation, the cause was removed to the Federal District Court. On August 12, 1929, that corporation filed its demurrer to plaintiff's petition, alleging that it failed to state facts sufficient to constitute a cause of action. After argument thereon, and without awaiting a ruling of the court, the plaintiff, on January 22, 1930, filed its amended petition alleging, leaving out some matters immaterial herein, that on November 12, 1914, H. C. Young and thirteen others entered on 3840 acres of oil and gas land; that on May 1, 1915, they entered into a lease with one Chas. A. Mau, under which ten per cent royalty was reserved to the original locators, and under which Mau agreed to properly protect the lands against drainage, and to prosecute and perform proper exploration and development work thereon; that defendant Merritt Oil Corporation succeeded to the rights and obligations under the Mau lease, and that plaintiff succeeded to certain royalty interest reserved thereunder, being the same as that alleged in the original petition; that plaintiff and defendant entered into the contract of July 27, 1917, being the same as mentioned in the original petition; that the defendant, the Merritt Oil Corporation had violated the express covenants contained in the Mau lease, and the implied covenants in the contract of July 27, 1917 in five particulars, mentioned in five different causes of action and being substantially the same as those set up in the original petition, and judgment was asked for damages in the sum of $775,000. The amended petition further disclosed that there were other parties interested

in the rights claimed by the plaintiff, the details of which are immaterial for the purposes of this case.

The Merritt Oil Corporation thereupon filed its objection to the amended petition, as constituting a departure from the causes of action sued on in the original petition. It also filed its demurrer on the ground that there was a defect of parties. This demurrer was sustained by the court on June 10, 1930. Thereupon the plaintiff, the Merrico Royalties Company, in October 1930, filed its second amended petition. That also is in five different causes of action, resting upon substantially the same alleged facts as those alleged in the first amended petition, modified only in so far as necessary to meet the objections raised by the demurrer. Accordingly, a number of parties were added, and their respective interests, and the bases thereof, set out. The Consolidated Oil Royalty Company, a Wyoming corporation, and certain individuals were joined as plaintiffs, and damages were claimed in the sum of $1,085,000. The Minnesota Oil Company, a Wyoming corporation, the Humphreys Foundation, a Colorado corporation, C. F. Clay, Alice B. Humphreys, and two others were joined as defendants, and it was alleged that these additional defendants, here named, refused to join as plaintiffs and were accordingly named as defendants. Thereupon the Merritt Oil Corporation filed its demurrer to the second amended petition on the ground of both defect and misjoinder of parties. It also filed its plea in abatement, duly verified, alleging that C. F. Clay, Alice B. Humphreys, The Humphreys Foundation, were residents of the State of Colorado, part owners of the same royalty interests of which the Merrico Royalties Company and the Consolidated Royalty Oil Company were part owners; that each of such added defendants were indispensable parties to the action, without the jurisdiction of the court, who had not appeared in the case and could not be served with process.

Thereupon the demurrer came on for hearing, and according to the judge's memorandum, the facts alleged in the plea of abatement were considered as true. The court held that the added defendants upon whom process had not, and could not be served, were indispensable parties, and made an order remanding the cause to the District Court of the state from which it had been removed. After the case had been sent back to the state court, and the Merritt Oil Corporation had therein filed a demurrer to the second amended petition, there adopted by the court, which was overruled, and after said corporation had filed its objection to the jurisdiction of the court, which was overruled, it filed in this court its petition for a writ of prohibition already above mentioned, claiming that the state court is without jurisdiction to proceed in the cause.

The arguments upon which the relator seeks to sustain its petition in this court are substantially these: The cause originally commenced in the District Court of the state was properly removable, and this point is not questioned; that while the Federal District Court has power to remand a cause removed to it from the State court, it has no power to remand one that was instituted in the Federal court, but that it attempted to do so in this case, for the reason that the causes of action set forth in the amended and second amended petitions filed in this case in the Federal court are based upon an entirely different contract from that on which the causes of action in the original petition were based, hence introduced new and different causes of action in the case, which is equivalent to instituting a new action in the Federal court. It is admitted that the State court has jurisdiction over the class of cases, of which the case at bar is one, and that, if the Federal court had jurisdiction to make the order of remand here complained of, then the State court has jurisdiction. Hence ·the main inquiry herein will be directed to the question of the jurisdiction of the Federal court

herein. The power of the Federal court to remand a case is given by Title 28, U. S. C. A., § 80, which reads as follows:

"If in any suit commenced in a District Court, or removed from a State court to a District Court of the United States, it shall appear to the satisfaction of the said District Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said District Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said District Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just."

The contention made herein is a novel one. It is freely conceded that no cases directly upholding it have been found, except that counsel for relator think that the case of Utah-Nevada Co. vs. DeLamar, 145 Fed. 505, contains language sustaining their contention. We have not found it. Aside from the authority mentioned, the cases relied on by relator consist mainly of three classes. To the first class belong the cases which held that an amended claim was improper at a particular stage of the case, because it was unjust or oppressive under the circumstances. To cite that class of cases is of no aid to us, since we must determine in the case at bar, not whether it was unjust or oppressive to introduce an amendment in this case at a particular time, but whether the amended or second amended complaint had the effect of depriving the court of that jurisdiction which it had in the case as it was removed to the Federal court, and, for the purpose of this case, we may admit that the causes of action stated in the amended and second amended petition are different from

those stated in the original petition. The second class of cases cited by relator are those in which it was held that an amendment should not relate back to the time of the commencement of the action so as to affect third persons. Thus it was held in Wortham vs. Boyd, 66 Tex. 401, 1 S. W. 109, that a purchaser *pendente lite* could not be affected by a new cause of action filed in the cause subequent to his purchase. We can, of course, readily conceive the justness of such holding, but that class of cases does not help us here. The third class of cases cited by relator are those which held that an amendment introduced a new cause of action, but that it was not permissible, for the reason that it was barred by the statute of limitations. We readily grant that the statute of limitations ought not to be able to be defeated by considering that an amendment or an amended petition relates back to the commencement of the action, but no such principle as that is involved here. Among the cases belonging to this class are N. C. Taylor & Co. vs. Anderson, 275 U. S. 431; Union Pacific Railroad Co. vs. Wyler, 158 U. S. 285, 15 Sup. Ct. 877; Bigham vs. Talbott, 63 Tex. 271; Alabama Great So. R. Co. vs. Smith, (Ala.) 1 So. 723. Many others might be added. In the last cited case it was said:

"But the abandonment of one cause of action, and the adoption of a new one by amendment is in effect the dismissal of the former suit, and the commencement of a new one upon a different cause of action."

Here we find a general statement, the correctness of which, when properly applied, we need not question. But it should, ordinarily at least, subserve some useful purpose, which appears not to be present here, for it is admitted that plaintiffs, in the absence of seeking redress in the appellate courts of the United States, could recommence their action in the State court. If that were done, and no diversity of citizenship should then appear, the

case would not be removable to the Federal court, and the only result of sustaining relator's contention herein would be to compel the institution of a new suit. If, on the other hand, diversity of citizenship should appear in such new suit, and the cause be again removed to the Federal court, the parties would again be confronted by the order of remand on the ground of the absence of indispensable parties, and the only result would be delay.

None of the cases of either of the three classes mentioned even remotely touch the question of jurisdiction involved in the case at bar. In all of them, the doctrine of relation back, was refused to be applied for a special reason not existing in this case. Moreover, in none of them was any reference made to the distinction between a suit and a cause of action, and yet it cannot be doubted that such distinction exists. A suit is a proceeding to enforce a right. A cause of action is the fact or combination of facts which give rise to the suit. Baltimore & Ohio R. R. Co. vs. Larwill, 83 O. S. 108, 93 N. E. 619; Spring vs. Webb, 227 Fed. 481; Alexander vs. Dean, 29 Ga. App. 722, 116 S. E. 643; Hutchinson vs. Ainsworth, 63 Cal. 286, 15 Pac. 82. Section 80, supra, provides for the dismissal or remanding of a suit, not of a cause of action. A suit may be pending even though no cause of action is stated, as is true when a petition is subject to a demurrer on the ground that no facts are stated to constitute a cause of action. See Frost vs. Witter, 132 Cal. 421, 64 Pac. 705, 84 A. S. R. 53. This distinction was not necessary to be observed in the cases cited by relator, and we know that language, if not construed in the light of the facts with which it deals, is frequently apt to be misleading. The language employed in the decisions cited to the effect that the new cause of action there brought in was in effect a new suit, means nothing more, in our judgment, than that the character of the suit then pending was changed in

such material respect that the amendment could not, for the special reasons existing in the case, be upheld.

We are also cited to Bon vs. Midwest Refining Company, 30 Fed. (2d) 410, and Henderson vs. Midwest Refining Company, 43 Fed. (2d) 23. These cases are somewhat different in character from the cases heretofore considered. It was held therein that a new cause of action was in effect the institution of a new suit for the purpose of enabling a party to remove a suit from the State court to the Federal court, if the requirements for such removal appear at that stage of the case, even though the suit might have been removed upon the filing of the original petition. While, at first blush, these cases may seem to give support to the contention of relator herein, a careful consideration will show that they do not. In the first place, when the Federal District Court made the order of remand in the case at bar, it necessarily determined that the suit was such as was remandable—that, in other words, the suit was not the equivalent of one originally commenced in the Federal Court. Whether that determination was erroneous or not does not matter here. It had, as will be more fully considered hereafter, the power to determine that matter, and hence we could not interfere. Furthermore, the statement in the cases cited, that the amended petition was in effect a new suit, does not bear the meaning, we think, that the old suit was entirely ended; that the situation was the same as though a new petition had been filed and a new summons had been issued, and that the amended complaint was no part of the original suit. The courts evidently meant nothing more than that the character of the suits were so changed as to require removal within the removal statutes. But that does not, necessarily at least, determine the power of the court under the authority given to remand a case under a different statute. After all, an amendment or an amended petition, if it can be called such at all, is filed in a pending suit; it is necessarily a part of it; it may change the character of the suit, but it is, nevertheless, still a part

of it. This is illustrated by the fact that when a petition fails to state a cause of action, as frequently happens, and a cause of an action is thereafter stated—new, as this cause of action necessarily is — the suit itself, already pending, remains. It is also illustrated by Sec. 89-1060, Rev. St. 1931, which provides that "the plaintiff may amend his petition without leave, at any time before the answer is filed, *without prejudice to the proceeding.*" We have no doubt that under this provision a new and different cause of action may be introduced. Deyo vs. Morss, 144 N. Y. 216, 39 N. E. 81; Chaddock vs. Chaddock, 130 Misc. Rep. 900, 226 N. Y. S. 152; Ford vs. Ford, 53 Barb. 525. See also King vs. Giblin, 36 Wyo. 448, 256 Pac. 1035. And yet under the specific provisions of the statute, directly applicable and seemingly controlling in the case at bar, the original suit itself is still pending, and the amendment becomes a part of it, for the provision "without prejudice to the proceeding" cannot mean anything else. Nor is this novel law. We find a striking illustration of our statement in the Institutes of Justinian 4, 35, which states as follows:

"If a person claim one thing instead of another, it is settled that he runs no risk; but on the fact being ascertained, we allow him to correct the error in the same suit; as for example, if he who should claim the slave Stichus has sued for Eros, or if a person has claimed to have something by virtue of a testament when the obligation arose out of a stipulation."

The rule, accordingly, contended for by relator, that an amended petition exhibiting a new cause of action is equivalent to the institution of a new suit, is, by these illustrations conclusively shown not to be of universal application, and the fact that it has been held to apply in certain cases and for special reasons, is no argument that it is applicable in the case at bar, unless a like reason,

or some other special reason, demands. In fact, logically speaking, it is difficult to see how an amendment which is a part of a pending suit can at the same time be not a part, and put an end to the pending suit, and constitute an entirely different suit in the sense contended for by the relator. See Brelle vs. Lumber Co., 149 Wash. 158, 270 Pac. 245. It is conceivable, of course, that it would be a misnomer to call a pleading exhibited in a case an amendment, or an amended pleading, but we do not think that this would be true in the case at bar, for the allegations as to obligation of the Merritt Oil Corporation, and the damages resulting therefrom, are the same in the amended as in the original petition; the only change made in the former is the allegation as to the source from which the obligation arose.

Let us pursue this subject a little further. While the addition of new parties in the Federal courts has, in some of the cases, been held not to necessitate or justify a remand of a cause, even though the citizenship of such new parties is the same as that of the adverse party (54 C. J. 363), yet it has also been held that when such new and additional parties are indispensable to the suit as originally commenced, and were not joined therein, the case should be remanded after they have been brought in, if, with them as parties, the jurisdiction of the Federal court does not then properly exist. 54 C. J. 363; Perry vs. Clift, 32 Fed. 801. In Highway Const. Co. vs. McClelland, (C. C. A.) 15 Fed. (2d) 187, new parties were added after removal of the case. The record then failed to show that there was a separable controversy, and the court held that the cause should be remanded. There can be no doubt that there was, in a sense, a "new suit" in these cases, as to the additional parties brought in, and if the theory of the relator were correct, the courts had no jurisdiction to remand these cases as to such new parties, but had at best only power to dismiss the cases as to them, and remand

the cases as to the others. To insist that such should be and is the rule is to insist upon something utterly useless and frustrative of justice. The necessity for such course of action is not intimated in the authorities cited. A truer test than that proposed by relator, as to whether or not the Federal court acts within its jurisdiction in a case like that at bar would be this: Would a judgment rendered for plaintiff upon an amended petition, such as appears herein, be wholly void, in case a defendant does not appear thereto? We hardly think, that relator would claim, that, had it abandoned the suit when the amended or second amended petition was filed, and judgment had been rendered against it, that it would have been wholly void upon the grounds upon which its contention rests herein.

The power—jurisdiction—of the Federal District Court to dismiss and remand a case is given by Section 80, supra. Hence, in its ultimate analysis, the solution of the question herein depends upon the meaning of that section. In Fauntleroy vs. Lum, 210 U. S. 230, 52 L. Ed. 1039, 28 Sup. Ct. 641, the court, speaking through Mr. Justice Holmes said:

"No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty, of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise without consideration; but it has power to do it, and if it does, the judgment is unimpeachable, unless reversed. Yet a statute could be framed that would make the power, that is, the jurisdiction, of the court dependent upon whether there was a consideration or not. Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter

upon which that court must pass, we naturally are slow to read ambiguous words as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule of law by which the court should decide.''

And in Burnet vs. Alverez, 226 U. S. 145, 57 L. Ed. 159, 33 Sup. Ct. 63, it was said:

''When a court has general jurisdiction to try the question whether the alleged right exists, the rules that determine the existence of the right ordinarily govern the duty only of the court, not its power. Its judgment that the right is established cannot be impeached collaterally by proof that the judgment was wrong.''

According to the rule of these cases, accordingly, announced by the highest tribunal of our land, it would be incumbent on this court to hesitate to say that the Federal District Court, in exercising its alternative power to remand or to dismiss, overstepped its power when it directed the one rather than the other. In case of doubt, according to these decisions, we should construe the statute above mentioned as intending nothing more ''than to fix the rule of law by which the court should decide,'' and that if it decided wrongly, it was no more than error and not a want of power to decide. The same general thought is expressed by Van Fleet in his work on Collateral Attack, Sec. 1, p. 96, and in St. Lawrence Boom & Mfg. Co. vs. Holt, 51 W. Va. 352, 41 S. E. 351, 359. Quotations from these authorities will be found in the case of State vs. District Court, 33 Wyo. 281, 312, 238 Pac. 545, and it is not necessary to repeat them here. In examining Section 80, supra, we find in it nothing to indicate that it meant more ''than to fix the rule of law by which the court should decide.'' A suit in the Federal courts, as in State courts, is commenced by the filing of a complaint and the service of a summons. There is no reason to think, that when Congress gave the former the power to dismiss a

case under certain conditions, as specified in Section 80, supra, that it had in mind cases other than those usually so commenced, giving, accordingly, the court power to remand all other cases, as also specified in that section. If Congress meant to limit the court's power of remand to a greater extent than it seemingly has, in cases properly removed, but in which the complaint is subsequently amended so as to embrace or present a new cause of action, it would seem that it would have used language more specific than that actually used. What the Federal court did in the case at bar, after it was removed, was pursuant to its jurisdiction. Bogart vs. Southern Pac. Co., 228 U. S. 137, 33 Sup. Ct. 497, 57 L. Ed. 768. That jurisdiction included the power to remand. In fact, it was said in Lawrence vs. Southern Pac. Co., 180 Fed. 822, 830, that such action is in the exercise of discretion.

We are asked, in effect, to act as a reviewing court of the action of the Federal District Court. It is, of course, clear that we could not do so, if that action were merely erroneous. If, on the other hand, the order of remand was totally void, then, in spite of that order, the action is actually still in that court, and there ought to be ample redress in the appellate courts of the United States to compel its District Court to proceed, and this court, if it has power to interfere at all, which is more than doubtful, should hesitate to do so. The only possible reason why we would have power to interfere, would be based upon the power to determine the jurisdiction of the District Courts of this state. But the lack of jurisdiction in the State District Court in the case at bar, if there is such lack, rests exclusively upon the contention that the Federal District Court had no jurisdiction to make the order of remand, and hence, upon ultimate analysis, no question of jurisdiction of the State District Court is involved herein. And, in that connection, we cannot overlook the general policy of the law which appears to be to make orders of

remand not reviewable. Sec. 71, Title 28, U. S. C. A. provides:

"Whenever any cause shall be removed from any state court into any district of the United States, and the District Court shall decide that the cause was improperly removed and order the same to be remanded to the state court from whence it came, such remand shall be immediately carried into execution, and no appeal or writ of error from the decision of the District Court so remanding such cause shall be allowed."

In accordance with that provision, it has been uniformly held, both in state and federal courts, that an order of remand cannot be reviewed in either of the courts mentioned, but that it is binding, and that the state courts thereupon reacquire jurisdiction of the cause. 54 C. J. 374, 376. The Supreme Court of the United States, in the case of Missouri Pac. R. Co. vs. Fitzgerald, 160 U. S. 556, 16 Sup. Ct. 389, 40 L. Ed. 543, in discussing this policy, said:

"So far as the mere forum was concerned, congress was manifestly of opinion that the determination of the Circuit Court that jurisdiction could not be maintained should be final, since it would be an uncalled for hardship to subject the party who, not having sought the jurisdiction of the Circuit Court, succeeded on the merits in the state court, to the risk of the reversal of his judgment, not because of error supervening on the trial, but because a disputed question of diverse citizenship had been erroneously decided by the Circuit Court; while as to applications for removal on the ground that the cause arose under the constitution, laws or treaties of the United States, that the finality was equally expedient, as questions of the latter character, if decided against the claimant, would be open to revision under Section 709, irrespective of the ruling of the Circuit Court in that regard in the matter of removal."

The hardship mentioned in that decision has been sought to be overcome in the instant case by bringing this action for a writ of prohibition, but we could not, on that account, be asked to deviate from the general policy above stated. Relator asks us to make an exception thereto, but only the existence of good reasons would be a justification thereof, particularly in a case in which, if at all, the Federal Appellate Courts, and not this court, ought to act. These reasons are absent. The exception is asked to be made in a case, which turns at best but on a procedural rule, not involving, so far as appears herein in any event, any question of fundamental justice to the relator, unless we are willing to assume that state courts are not courts in which justice may be had. Frail, as we know human nature is; erratically, as we realize, the human mind is sometimes apt to work, yet pride or modesty and the known rectitude of our trial courts forbid such assumption, and we live in hope that, when the case is tried, or appealed to this court, Justice and Reason may deign to approach and take sway.

The writ of prohibition prayed herein must be refused and the temporary writ issued herein must be quashed. It is so ordered. It appearing that the action herein has been brought in good faith, the lower court should fix a reasonable time for the relator herein to file in the case such answer as it may deem proper.

Kimball, C. J., and Riner, J., concur.