In the Matter of the Estate of HYMAN HEARN, Deceased.

Surrogate's Court, Kings County, February 5, 1936.

*I. Gainsburg,* for the applicant, Anna Pomerantz Hearn, widow of deceased.

*Schlesinger & Krinsky*, for Murray Hearn, individually and as executor, etc., of Hyman Hearn, deceased, respondent.

*Maxwell Ross*, special guardian for infant contingent remainderman.

WINGATE, S. The present proceeding, ostensibly instituted under the authority of sections 145 and 145-a of the Surrogate's Court Act, seeks a variety of determinations in the interest of the surviving spouse of the decedent. In the order enumerated in the prayer for relief, these are, *first*, that the will of the decedent did not make such provision for his surviving spouse as to bar her rights to elect to take in contravention of its terms; *second*, that she is entitled to take her intestate share of the estate outright; *third*, that if the court decide that the provisions of the will are binding upon the widow, it further determine the amount of the principal fund thereof, and in such process that it adjudge, *fourth*, that certain property which the decedent's son, Murray Hearn, claims as an individual to be property of the estate.

Whereas the answers which have been interposed to the petition contain denials of certain important allegations, the parties have adopted the increasingly prevalent practice of seeking an advance adjudication as to the legal validity of the petition by what amounts to a motion for judgment on the pleadings, which, as noted on previous similar applications, amounts in effect to a demurrer to the petition under the old practice (*Matter of Kirkman*, 143 Misc. 342, 343; *Matter of Larney*, 148 id. 871, 872).

For present purposes, therefore, the facts alleged in the petition and such inferences as may fairly be drawn from them, are admitted to be true. (*Greeff* v. *Equitable Life Assur. Society*, 160 N. Y. 19, 29.) "A demurrer to a complaint for insufficiency can only be sustained when it appears that, admitting all the facts alleged, it presents no cause of action whatever. It is not sufficient that the facts are imperfectly or informally averred, or that the pleading lacks definiteness and precision, or that the material facts are argumentatively averred. The complaint on demurrer is deemed to allege what can be implied from the allegations therein, by reasonable and fair intendment." (*Marie* v. *Garrison*, 83 N. Y. 14, 23.) It follows that where two inferences are reasonably deducible from the statements of the pleading, the one more favorable to the pleader must be indulged. If, therefore, on this basis, any foundation for relief to the petitioner can be found to exist, under the allegations made, the motion for judgment must be overruled, whereupon the issues raised by the denials become operative and must be set down for trial.

The petition alleges that in the fall of 1932 the decedent, who was a widower, proposed marriage to the petitioner, making inducing representations to the effect that he was worth several hundred thousand dollars, was the owner of ten pieces of real estate, stocks and bonds, and could and would handsomely support her and her children by a former marriage. Upon her acceptance of his proposal, he took her to an apartment building which he represented to her that he owned, and she selected one of the apartments, which was redecorated and furnished in accordance with her wishes. They intermarried on February 18, 1933, and during the period intervening between that date and his death, on November 8, 1934, took a number of trips together, both in this country and to Europe, and sojourned during the winter of 1933–1934 in Florida.

On several occasions after the marriage the decedent reassured her as to the future, representing that she would, on his death, receive one-third of all of his property. He particularly impressed upon her that his son, Murray Hearn, who was then, and still is, a justice of the Municipal Court of the City of New York, would care for and protect her. Several of these representations were made in the presence of his son, who assented to them, saying, " Pa, I am swearing I will take care of her like my own mother." Similar statements were repeated by the son after the death of the decedent.

The only provision for the petitioner which was contained in the will of the decedent erected a trust for her life benefit in one-third of his estate, the terms of which will hereinafter be discussed. In spite of the fact that the son of the decedent, said Murray Hearn, informed her that the estate of the decedent approximated only $60,000, she accepted the will, contenting herself with her right of limited election to take $2,500 outright. This she did, impelled by the necessity for ready money and " believing and relying upon the statement of the decedent and those of his son, Murray Hearn, * * * that regardless of the provisions of said will, the said Murray Hearn would deal fairly and justly with " her " and would provide for " her " proper maintenance and support * * * during her lifetime."

It is to be noted at this point that essential portions of these allegations are denied by Mr. Murray Hearn, but for the purposes of the present application these denials must be disregarded and the statements taken as true.

This presents for determination the basic question raised by the petition, namely, on this state of facts, is the petitioner entitled to alter the limited election heretofore made by her and substitute therefor an election to take her share of the estate outright, as in intestacy, in spite of the fact that the six months' period specified in section 18 of the Decedent Estate Law has expired?

In approaching the solution of this question, the further facts should be noted that Murray Hearn was named as executor in the decedent's will, which accords him broad discretionary powers, and that he and his children, in the event of his death, are the sole beneficiaries thereunder other than the petitioner. It should also be noted that by an instrument dated January 16, 1933, and acknowledged February 1, 1933, less than three weeks prior to his marriage, and subsequent to his engagement to the petitioner, the decedent entered into a purported trust agreement with his son which provided that the vastly preponderant proportion of his property should be held by him and his son as trustees with income and portions of the principal payable to him for life and with the remainder payable thirty days after his death to the son if living, and if not to the latter's children.

The contending parties, in their extremely voluminous briefs, have cited many authorities from this and other States which possess more or less relevancy in the determination. Substantially all of them have been examined, without altering the views previously expressed by this court in its opinions in *Matter of Zweig* and *Matter of Lottman* (145 Misc. 839) that in the ordinary case, in the absence of the procurance of an extension of time for the purpose, the rights of a surviving spouse to elect to take against a will, pursuant to section 18 of the Decedent Estate Law, or to alter an election theretofore made, expire on the termination of six months after the date of issuance of letters testamentary, and this, irrespective of the nature or complete absence of testamentary provisions for her benefit.

There is, however, a well-established exception to this general rule which is recognized in a considerable proportion of the cases cited, namely, that in this as in all other branches of the law, fraud renders voidable all transactions which it touches. (*Stephens* v. *Gibbes*, 14 Fla. 331, 357, 358; *Whitesell* v. *Strickler*, 167 Ind. 602, 618; 78 N. E. 845; *Bullock* v. *Smith*, 201 Iowa, 247, 249; 207 N. W. 241; *Dougherty* v. *Barnes*, 64 Mo. 159, 162; *Daub's Estate*, 305 Penn. St. 446, 454; 157 A. 908; *Harry* v. *Green*, 28 Tenn. 182, 184; *Ludington* v. *Patton*, 111 Wis. 208, 232; 86 N. W. 571.)

As to the applicability of this principle to the facts alleged in the petition, the parties are in sharp conflict. Their divergence o opinion, however, seems to reside largely in the fact that the respondent contends for the application of the strict rule applicable to an action for legal fraud, whereas the widow relies upon the more liberal doctrine in this regard which is administered in courts of equitable jurisdiction.

Even were the respondent's contention to be favored, however, the court is by no means clear that the facts alleged would not bring the widow within the doctrine of those cases which have determined that a misrepresentation of an existing intention constitutes actionable fraud (*Deyo* v. *Hudson*, 225 N. Y. 602, 612; *Ritzwoller* v. *Lurie*, Id. 464, 468; *Adams* v. *Gillig*, 199 id. 314, 322; *Moore* v. *Abbey*, 213 App. Div. 787, 788; *Pease & Elliman, Inc.*, v. *Wegeman*, 223 id. 682, 684; *Bareham & McFarland, Inc.*, v. *Kane*, 228 id. 396, 400) and that concealment of material facts is, in certain situations, as potent for the purpose of giving rise to actionable rights as positive misrepresentation. (*Nickley* v. *Thomas*, 22 Barb. 652, 654; *Chaddock* v. *Chaddock*, 130 Misc. 900, 902.)

In equity, a much broader connotation inheres in the term " fraud " than at law. Here it imports any acts or omissions " which involve a breach of duty, or trust or confidence reposed, and are injurious to another " (*Matter of Dorrity*, SLATER, S., 118 Misc. 725, 728); it is " conduct inconsistent with fair dealing and good conscience " (*Matter of Alfaya*, 122 Misc. 771, 777). In the frequently applied words of Story (1 Story Eq. Juris. [5th ed.] § 187), it " properly includes all acts, omissions, and concealments, which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." (*Richardson* v. *Trimble*, 38 Hun, 409, 416; *Polachek* v. *New York Life Ins. Co.*, 147 Misc. 16, 20; affd., 240 App. Div. 1028; *Matter of Hill*, 2 Con. 25; *Matter of Gellis*, 141 Misc. 432, 439.) Whenever an occurrence within this description is demonstrated, the jurisdiction of a court of equity attaches and relief may be given (*Reynolds* v. *Reynolds*, 224 N. Y. 429, 433; *Ahrens* v. *Jones*, 169 id. 555, 560; *Goldsmith* v. *Goldsmith*, 145 id. 313, 318; *Wood* v. *Rabe*, 96 id. 414, 426), which usually will take the form of an undoing of the thing which has been accomplished. (*Melenky* v. *Melen*, 233 N. Y. 19, 22.)

So potent is this doctrine that when a relationship of trust and confidence has been demonstrated to exist, " dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominant situation * * * cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure direct or indirect, of the party benefited. This rule does not proceed upon a presumption of the invalidity of the particular

transaction, without proof. The proof is made in the first instance when the relation and the personal intervention of the party claiming the benefit, is shown." (*Matter of Smith*, 95 N. Y. 516, 522.) (See, also, *Nesbit* v. *Lockman*, 34 id. 167, 169; *Cowee* v. *Cornell*, 75 id. 91, 99.)

The generation of the inference of invalidity noted is conditioned on a preliminary demonstration of the existence of the relationship of trust and confidence, or of superiority and weakness. (*Doheny* v. *Lacy*, 168 N. Y. 213, 222; *Matter of Donnelly*, 157 Misc. 319, 323, and authorities cited.)

The allegations in the petition at bar are ample to demonstrate the existence of such relationship between the widow and the son, who in addition to nomination as executor was the chief testamentary beneficiary. His judicial position alone would tend to place him in a position of superiority, and where this fact is coupled with the assurances of fair dealing on his part with which the petition is replete, and his own assurance to the petitioner that he would " take care of her like my own mother," the reasonableness of her reliance upon his *bona fides* in protecting her interests is incapable of successful refutation. This point having been attained, the requisite preliminary demonstration is made, since the petitioner alleges as a fact (¶ XIX) that she did rely upon him. As a result of such reliance she permitted her potential statutory right to receive one-third of the estate in immediate possession to lapse. He, and his children in the event of his death, are the potential beneficiaries of her non-action, wherefore, in the absence of any exculpating demonstration on his part, she should be restored to her former position and be permitted to assert the rights which were hers under the statute immediately following the demise of the testator.

The basic question submitted is accordingly decided adversely to the respondent and it is the determination of the court that the allegations of the petition are sufficient to permit the widow to withdraw her notice of limited election and to interpose an election to take her entire intestate share, provided she acts with reasonable promptness.

The second question raised by the petition, as to whether the widow would be entitled to take her intestate share of the estate outright, is presently academic and will not be passed upon. (*Matter of Mount*, 185 N. Y. 162, 170; *Matter of Franklin Trust Co.*, 190 App. Div. 575, 577; *Matter of Hoole*, 156 Misc. 821, 823; *Matter of Cohen*, 147 id. 570, 573.) Any right of a surviving spouse to take the property of a decedent in contravention of the terms of his duly probated will is strictly conditioned on the performance by the survivor in person during the continuance of his or her life (*Matter*

*of Mihlman*, 140 Misc. 535, 538) of certain acts specified in the enactment creating the right. (*Matter of Zweig*, 145 Misc. 839, 849.) The acts enumerated as conditions precedent to the generation of this potential right have not now been performed. So far as is presently determinable they may never be performed either as a result of the decision of the widow to abandon them, by reason of her intervening death, or in consequence of some adjustment between the parties. The question is, therefore, not possible of present decision, since hypothetical determinations based upon future contingencies are not within the scope of adjudication.

Whereas, however, the interpretation of item " Second " of the will which was sought by the petitioner, was chiefly directed to its validity as against an absolute election by her under subdivision (d) of section 18 of the Decedent Estate Law, which, for the reasons stated is not presently determinable, its efficacy under section 42 of the Real Property Law is fairly within the issues of the case. Since, in this aspect, the subject has been extensively briefed by all parties, consideration thereto will be given.

By this item the testator directed that the share of his estate to which the widow would have been entitled in the event of his intestacy, should be erected into a trust in the hands of his son, Murray Hearn, to pay the income to the widow for life with the remainder payable outright on her death to this son, if living, and if not living, to his lawful issue. Then follows the provision which has given rise to controversy, which reads: " I hereby direct that my son, Murray Hearn, shall have the right and power, in his uncontrolled discretion, at any time and from time to time during the continuance of the trust herein created, to terminate any part or parts or all of said trust by an instrument in writing duly signed and acknowledged by him and filed with the Clerk of the Surrogate's Court, and upon such termination such part or parts or all of said trust shall be paid over by the Trustee to my wife, Anna Pomerantz Hearn."

It is the contention of the petitioner that the inclusion of this power in the trustee to terminate the trust in whole or in part at any time during its continuance renders it void, as substituting the discretion of the trustee as to time of termination for the statutory limit of duration of two lives in being. This position is wholly untenable. The duration of the trust can by no possibility extend beyond the term of the widow's life in view of the positive direction that on her death the remainder shall be paid over absolutely. There is consequently no infringement of the statute against perpetuities. (*Matter of Terwilligar*, 135 Misc. 170, 175; affd., 230 App. Div. 763; *Matter of Davison*, 134 Misc. 769, 771; affd., 230

App. Div. 868; *Matter of Milhau*, 151 Misc. 283, 286; *Matter of Denniston*, 157 id. 80, 81, 82.) It is, of course, true that an authorization for partial termination will not save a trust which, but for the exercise of the power, might continue beyond the authorized period (*Matter of Howells*, 145 Misc. 557, 563), but that is not the present case. The term of the trust is definitely limited to the duration of one life and the power of termination exists only " during the continuance of the trust." The authority to the trustee is, therefore, no different from the extremely common one of an authority for invasion for the benefit of the life tenant and is wholly valid so far as section 42 of the Real Property Law or section 11 of the Personal Property Law are concerned.

The two final determinations sought are somewhat naïve in nature in view of the showing of the record. While in terms requesting a decision as to the amount of the principal of the testamentary trust for the widow, and whether certain property claimed by the executor-son is to be included as part of the property of the estate, they present, in essence, but a single question. As has been noted, the decedent, a few weeks prior to his death, purported to erect a trust of a preponderant proportion of his property. The widow attacks this transaction as in fraud of her rights either under the doctrine of *LeStrange* v. *LeStrange* (242 App. Div. 74) or some other theory, and seeks a declaration by this court that the property which the decedent purported to erect into a trust in his hands and those of his son as trustees, and which the latter now claims as his individual property by reason of the terms of the purported trust instrument, is in reality the property of the estate.

Three potential reasons oppose themselves to a present determination by this court of the basic question involved. The first, advanced by the respondent, that this court lacks jurisdiction in the premises by reason of the fact that the decision would involve the interpretation of an *inter vivos* trust instrument, need not be taken seriously. The language of section 40 of the Surrogate's Court Act, when read in the light of its judicial interpretation and the apparent impatience of the Legislature with any restriction upon the broad grant of powers therein contained (*Matter of Rosenberg*, 157 Misc. 490, 492, 493; *Matter of Morris*, 134 id. 374, 380), would seem to answer in the affirmative the basic question of the jurisdiction of the court. Whereas it is unquestionably true that this court will not ordinarily undertake the task of construing the terms of an *inter vivos* trust (*Matter of Lyon*, 266 N. Y. 219, 224; *Matter of Timberg*, N. Y. L. J. Nov. 15, 1934, p. 1822, and authorities cited), the present is not such a case. Here the only question propounded is as to whether certain acts of the decedent, which

purported to divest him in his individual capacity of certain specified property, were efficacious for the purpose. Such issues are habitually determined in this court in questions of conveyances or gifts. (*Matter of Dunne*, 136 Misc. 250; affd., 232 App. Div. 831; *Matter of Pastore*, 155 Misc. 247.) Indeed the efficacy of an attempt to erect a trust was the precise point involved in *Matter of Leverich* (135 Misc. 774; affd., on opinion of this court, 234 App. Div. 625).

The second objection, which no one interposes, is, however, decisive against any determination of the question at this time. The remedy of the petitioner, if the executor fails to include property belonging to the estate in the assets thereof, is by objection to his accounts. Any issue raising such a question prior to that time, except possibly on a petition for the removal of the fiduciary, is premature.

Finally, and perhaps most conclusive of all, the same question is now pending in the Supreme Court on the suit of the widow. Prior to the presentation of this petition, she there instituted an action to set aside the purported trust as in fraud of her rights. The argument of the petitioner that the issues in that action differ from those here propounded is specious but unsound. There the attack on the validity of the conveyance is frontal. Here it is indirect. The present application in this regard is in essence similar to a discovery proceeding under section 205 of the Surrogate's Court Act to bring property in the possession of another into the estate. So viewed, the answer of the respondent is that the property belongs to him as an individual by reason of its conveyance to him by the decedent under the terms of the trust instrument. The reply of the petitioner would then be that the conveyance was void as in fraud of her rights, which is the precise question directly involved in the pending proceeding in the Supreme Court.

Whereas, therefore, this court would unquestionably have concurrent jurisdiction to determine the issue of whether or not the erection of the purported trust effected a valid transfer of the assets in question from the decedent, had the issue not already been raised, it is primary that where the jurisdiction of one of two tribunals of concurrent powers has attached, the other will refuse to pass upon the issues involved. (*Schuehle* v. *Reiman*, 86 N. Y. 270, 273; *Flatauer* v. *Loser*, 211 id. 15, 20; *Colson* v. *Pelgram*, 259 id. 370, 375; *Matter of Farrell*, 125 App. Div. 702, 704; *Producers Royalty Co., Inc.*, v. *Ottinger*, 129 Misc. 694, 696; *Matter of Preisendorfer*, 118 id. 524.)

A decree may accordingly be entered on notice construing the will as hereinbefore determined, and the issues of fact respecting the question first treated may be brought on for trial in the usual way.

Proceed accordingly.