### PORTER et al. v. ROTT et al.

No. 15772—Opinion Filed Jan. 12, 1926.

**1. Usury—Requisites—Corrupt Intent of Lender.**

To constitute the offense of usury, there must be a corrupt intent to do something which is in violation of the statutes, and the lender must knowingly and intentionally charge a greater rate of interest than that prescribed by law.

**2. Same—Evasion of Law by Collateral Agreement—Jury Question.**

Where a claim is made that usury has been charged, and that the usurious charge is evidenced by a collateral agreement intended as a cloak for such usurious transaction, as, for instance, the charging of a commission by the lender, the question as to whether such collateral agreement or such commissions were taken or reserved with the intent to charge a higher rate of interest than that allowed by law, and whether said transaction was a cloak or device to evade the law against usury, is a question of fact for the jury, or the court sitting as a jury.

**3. Fraud—Requisites of Actionable Fraud.**

To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) all of these facts

must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery.

### 4. Corporations—Relation to Creditors—Trusts and Liens.

A corporation, as between itself and its creditors, is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor.

### 5. Creditors' Suit — Prerequisites—Judgment.

It is a prerequisite to the maintaining of a creditors' bill seeking satisfaction out of equitable assets, or choses in action not reachable by execution at law, that the creditor should have established his claim or debt by a judgment at law; a general creditor with a mere legal demand cannot, in the absence of statutory authorization, come into equity to collect his claim.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Rogers County; C. H. Baskin, Judge.

Action by William Tyler Rott against Revere Stockholders Oil Corporation, J. B. Porter, and Mount Virgin Oil & Gas Company to foreclose a real estate mortgage and subject certain assets of said corporation in the hands of J. B. Porter to the payment of plaintiff's claim. C. J. Dixon, James Langan, Erwin Kaiser, Frank Boes, Alma Mueller, Theodore Mueller, Anna Parry, Lawrence G. Webber, Bessie H. Tapp, Elmer E. Derr, Rudolph C. Mueller, Otto H. Basselmann, J. S. Welch, G. A. Derr, H. L. Shotmeyer, and Jess Hontz intervened in the suit. Judgment was rendered for the plaintiff against J. B. Porter and Revere Stockholders Oil Corporation, and in favor of the intervening defendants against Porter, and defendants appeal. Affirmed in part and reversed in part.

Rainey & Flynn, William E. Clapham, Holtzendorff & Holtzendorff, and Calvin Jones, for plaintiffs in error.

Thomas G. Moorehead, H. F. Fulling, and Fenwick & Ratliff, for defendants in error.

Opinion by FOSTER, C. In this case an action was instituted in the district court of Rogers county by William Tyler Rott, one of the defendants in error, as plaintiff, against Revere Stockholders Oil Corporation, J. B. Porter, and Mount Virgin Oil & Gas Company, as defendants, to foreclose a real estate mortgage upon 50 acres of land owned by Revere Stockholders Oil Corporation located in Rogers county, and to subject certain property and assets of said corporation, alleged to be in the hands of the defendant, J. B. Porter, to the payment of the mortgage indebtedness.

It was the theory of the plaintiff, as disclosed by his petition, that he was induced to loan the sum of $15,000 to the Revere Stockholders Oil Corporation by and through fraudulent representations of the defendant J. B. Porter, an officer and director of said corporation, for the purpose of appropriating the proceeds of said loan to his own individual use, and that as a result of such fraudulent conduct he paid the proceeds of said loan in the sum of $15,000 to the said J. B. Porter, took the company's note therefor, due and payable three months after date secured by a mortgage on 50 acres of land in Rogers county, but that the said J. B. Porter, instead of turning the proceeds of said loan into the corporate treasury, appropriated all of it to his own personal use, whereby he became individually liable to said company and to the plaintiff for said amount. It was further charged that the said J. B. Porter had sold stock in said corporation and collected therefor the sum of $16,000, appropriated that sum to his own use, and that he should be required to account to said corporation therefor, for the use and benefit of William Tyler Rott. An attachment was issued against J. B. Porter, who was a nonresident of the state of Oklahoma, and levied upon certain real estate located in Rogers county standing in the name of C. J. Dixon and James Langan, who intervened in the action, and by motion obtained a dissolution of said attachment, from which action of the court in dissolving such attachment no appeal has been taken. Various parties, alleged stockholders in Revere Stockholders Oil Corporation, intervened in the action, and filed their plea in intervention, in which they asserted the right to recover against J. B. Porter, the various sums which they had been induced to pay for stock in said corporation by reason of alleged fraud perpetrated on them by said Porter in the sale of said stock.

A demurrer to the petition of plaintiff was filed by J. B. Porter and to the plea of the interveners by J. B. Porter and Revere Stockholders Oil Corporation on the ground that neither the petition nor the plea stated a cause of action; heard and overruled and exceptions taken. There is no controversy among any of the parties as to the rights of the Mount Virgin Oil & Gas Company, whose oil and gas lease upon the land in controversy is conceded to be prior and paramount to the mortgage of William Tyler Rott. Answer was filed by J. B. Porter and Revere Stockholders Oil Corporation to the

petition of William Tyler Rott, which, among other things, asserted that the transaction, upon which the action of the plaintiff Rott was founded, was usurious. Issues were joined between the plaintiff Rott and the defendants J. B. Porter and Revere Stockholders Oil Corporation and between the intervening stockholders and said defendants, and a trial to the court, without the intervention of a jury, which was concluded on the 21st day of December, 1923, resulted in a judgment of foreclosure in favor of the plaintiff Rott against the defendant Revere Stockholders Oil Corporation for the sum of $14.222.04, and for any deficiency remaining unpaid on said judgment after the sale of the real estate, judgment was rendered against J. B. Porter personally therefor, and required him to account to the plaintiff for such deficiency out of the sum of $29,500, for which sum the trial court also gave judgment in favor of Revere Stockholders Oil Corporation against Porter. The court further rendered judgment in favor of the intervening stockholders against the defendant J. B. Porter, personally, for the several amounts claimed to have been paid by them to J. B. Porter for stock in the Revere Stockholders Oil Corporation; dissolved the attachment levied upon certain real property in Rogers county owned by C. J. Dixon and James Langan, and appointed a receiver for the corporation. From this judgment and from an order overruling their motion for a new trial, the defendants below, J. B. Porter and Revere Stockholders Oil Corporation, appeal to this court for review of said judgment.

For convenience the defendant in error William Tyler Rott will be hereinafter designated as plaintiff, the defendants in error, interveners, as intervening stockholders, and the plaintiffs in error, as defendants, as they appeared in the trial court.

The first proposition urged by the defendants for a reversal of the judgment is that the transaction upon which plaintiff's action was founded was usurious. It appears that the defendant, J. B. Porter, had promoted and organized the Revere Stockholders Oil Corporation and had interested one Louis Cannaviella, a tobacco dealer of Brooklyn, New York, and a person of Italian descent, to subscribe for some stock in said corporation. The corporation, through its organizer and promoter, J. B. Porter, afterwards its president and general manager, was prospecting for oil upon 50 acres of land which the corporation owned in Rogers county, Okla. It appears that the company started drilling operations upon its land, but for lack of funds was unable to proceed with the work, and the company, through J. B. Porter, enlisted the aid of Cannaviella to procure a loan of $12,000 to enable the company to proceed with its drilling operations.

Cannaviella, it seems, while interested as a stockholder in having the company obtain the loan, could not afford to spend the time and expense which would be necessary in visiting New York City for the purpose of negotiating the loan. He thereupon agreed with the defendant Porter that for the sum of $3,000, to be paid when the mortgage became due, he would undertake to interest someone in making the loan. He took the matter up with the plaintiff in New York City, and after making several trips from New York City to Rogers county, finally succeeded in obtaining the loan from plaintiff in the sum of $12,000. The record discloses that Cannaviella obtained a power of attorney from the plaintiff in New York for the purpose of closing the transaction between the plaintiff and Porter, pursuant to which the sum of $12,000 was paid by the plaintiff to the Revere Stockholders Oil Corporation, acting through its representative, Porter, and a note for the sum of $15,000 executed and delivered to the plaintiff due three months thereafter secured by a mortgage upon the real estate owned by the company in Rogers county.

The trial court rendered judgment in favor of the plaintiff for the sum of $12,000 only, with interest and attorneys' fees added upon the theory that Cannaviella was the agent of the borrower, and since Cannaviella was not a party to the suit, judgment could not be rendered in his favor for the $3,000. In this we perceive no error. It is true that Cannaviella held a power of attorney from the plaintiff and was undoubtedly an agent of the plaintiff, so far as the business of closing the loan transaction was concerned, but we perceive in this transaction no conduct on the part of the plaintiff evincing a corrupt intent to charge the borrower with $3,000 as a commission for his agent, in view of the positive evidence disclosed by the record that Porter himself had agreed to pay this sum to Cannaviella, as his agent, when the mortgage indebtedness became due. There is evidence in the record that the $3,000 was added in the face of the note at the instigation and advice of Porter himself as a matter of convenience between him and the stockholders of the corporation. While plaintiff appears from the record to have been seeking to recover from the defendants the full $15,000, we cannot say that it was upon the theory that Cannaviella was his agent in the deal, by which Cannaviella

was to receive $3,000 for his services from Porter, which arrangement between Cannaviella and Porter antedated the transaction between the plaintiff and Cannaviella by which Cannaviella received the power of attorney, and when the entire record is considered, we think there was evidence fully justifying the trial court in finding and concluding that Cannaviella was the agent of the defendant and not of the plaintiff in the arrangement whereby Cannaviella was to receive $3,000 for his services, and in finding that no corrupt motives on the part of the plaintiff had been shown such as would render the transaction usurious.

In the case of Deming Investment Co. v. Grigsby 65 Okla. 88, 163 Pac. 530, this court said:

"To constitute the offense of usury, there must be a corrupt intent to do something which is in violation of the statutes, and the lender must knowingly and intentionally charge a greater rate of interest than that prescribed by law."

In Garland v. Union Trust Co.. 49 Okla. 654, 154 Pac. 676, it is said in the syllabus:

"Where instruments executed for the loan of money are apparently fair on their face, and the interest reserved thereby, as disclosed by the terms of the instruments, is within the legal limit, but the claim is made that usury was, in fact, retained, and that such usurious charge is evidenced by a collateral instrument or by some agreement or device intended as a cloak for such usurious transaction, as, for instance, the charging of a commission by the lender, the question as to whether such collateral instrument or such commissions were taken or reserved with the intent to charge a higher rate of interest than that allowed by law, and whether said transaction was a cloak or device to evade the law against usury, is a question of fact for the jury or the court sitting as a jury."

The question as to whether the commission which the defendants agreed to pay to Cannaviella was taken or reserved with the intent to practice usury and whether said transaction amounted to a device to evade the law against usury was a question of fact for the trial court to determine, and there being evidence in the record reasonably tending to support the finding and judgment of the trial court that no usury was practiced. such judgment is conclusive in this court on appeal.

We come now to consider the claims of the intervening stockholders. It is contended by the defendants that the interveners had no rights in the action, and that the demurrer interposed by defendants to their plea in intervention should have been sustained. It is conceded by the intervening stockholders that their action is not an action in which the defendant corporation is interested, but is an action personally against J. B. Porter for fraud in the sale of stock. It is admitted that the intervening petition of the stockholders fails to state a cause of action if their action was one against the corporation, for the cancellation of their stock and for the recovery of various sums of money paid therefor, or if it was an action of stockholders on behalf of the corporation to recover money or property which the officers and agents of the company had wasted, but it is insisted that their action is one for fraud practiced by Porter individually.

It is conceded by the defendants in their brief that where an officer of a corporation, through fraud, induces a person to buy stock, such person has a cause of action in tort against the officer personally for the fraud practiced. but it is contended that the petition of the intervening stockholders in the instant case does not contain sufficient allegations to constitute a cause of action for fraud and deceit against Porter in the sale of the stock. We think this contention must be sustained.

In Wingate v. Render, 58 Okla. 656, 160 Pac. 614, this court said in the 4th paragraph of the syllabus:

"To constitute actionable fraud, it must be made to appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury; and (7) all these facts must be proven with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them would be fatal to a recovery."

We have examined the petition of the intervening stockholders and it fails to contain the allegations necessary in an action for fraud against the defendant Porter, personally. None of the interveners testified in the case as to any representations made by the defendants and relied upon by them in the sale of said stock. and no allegation is made in the petition of the actual value of said stock, as distinguished from its value as represented by the defendants, which can form the basis for estimating damages in an action for fraud and deceit. We conclude, on this branch of the case, that the trial court erred in not sustaining the demurrer interposed to the petition of the intervening stockholders, and that their petition should have been dismissed.

The next proposition to be considered is whether the plaintiff had a right to proceed against the defendant J. B. Porter, for the purpose of subjecting assets of the corporation alleged to have been misappropriated by him, as an officer of said corporation, to the payment of plaintiff's claim, without alleging that a judgment had first been obtained against said corporation. It was alleged in plaintiff's petition that proceeds of the loan made by plaintiff to the defendant corporation, together with more than $16,000 paid by various individuals to the defendant Porter for stock in said corporation, had been appropriated by Porter to his personal use, and that these sums being due and owing to the corporation from Porter, could be subjected to the payment of plaintiff's mortgage in an action in which the corporation and the defaulting officer were joined as codefendants, without first having reduced the original claim against the corporation to judgment. As to any deficiency remaining unpaid upon the original claim of the plaintiff, after the specific mortgage lien had been foreclosed the position of the plaintiff would be that of a simple creditor of a corporation. No lien by contract existed in his favor upon the specific fund sought to be subjected to the payment of such deficiency, and it therefore follows that if the plaintiff can reach this particular asset of the corporation, without first having exhausted his legal remedy at law, it must be by reason of the fact that he has a general lien as creditor of the corporation upon all of its assets, in whatever form these assets may exist.

As we understand it, the trust fund doctrine has never been carried to the entent of affording simple creditors of a corporation a right to come into a court of equity and obtain a seizure of property of the corporation in satisfaction of their claims without first having reduced such claim to judgment.

In the case of Hollins v. Brierfield Coal & Iron Co., 37 L. Ed. 1113, the Supreme Court of the United States, speaking through Mr. Justice Brewer, said:

"The plaintiffs were simple contract creditors of the company; their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims; and this, notwithstanding a statute of the state may authorize such a proceeding in the courts of the state. * * *

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. * * *

"Neither the insolvency of the corporation, nor the failure to collect in full all stock subscriptions, nor all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."

See, also, Fletcher on Corporations, vol. 8, pages 8640 and 8644.

It is to be noted that this is not a suit to wind up the affairs of an insolvent corporation for the benefit of all its creditors, but is an attempt by one creditor to reach certain assets of the corporation, and subject the same to the payment of his individual claim, without first having reduced his claim to judgment. It seems clear to us that the action of the plaintiff in the instant case was an action in the nature of a creditors, bill, and before such action can be maintained a judgment at law must first be obtained against the debtor. Under the holding of the Supreme Court of the United States above cited, there seems to be no reason for withholding the application of the general rule merely because the debtor is a corporation.

In Fletcher's Encyclopedia of Corporations, vol. 5, p. 4940, section 3206, it is said:

"Courts of equity entertain creditors' bills against a natural person or a corporation, on the ground that the creditor has no adequate remedy at law, and, as a general rule, therefore, a mere general creditor, who has not obtained a judgment at law or acquired a lien on the property sought to be reached, has no standing in equity to maintain a creditor's bill."

The rule is again stated in 15 Corpus Juris, page 1388, as follows:

"It is a prerequisite to the maintaining of a creditor's bill seeking satisfaction out of equitable assets or choses in action not reachable by execution at law, that the creditor should have established his claim or debt by a judgment at law; a general creditor with a mere legal demand cannot, in the absence of statutory authorization, come into equity to collect his claim.* * *"

See, also, Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, page 3356.

The rule above announced has been adhered to by this court in the following cases: Chandler v. Colcord, 1 Okla. 260, 32 Pac. 330; Miller v. Melone, 11 Okla. 241, 67 Pac. 479; Indian Land & Trust Co. v. Owen, 63 Okla. 127, 162 Pac. 818.

The plaintiff having failed to allege that he had obtained judgment against the debtor corporation, it follows that the trial court erred in overruling the demurrer of the defendant Porter to the petition of the plaintiff, and in rendering any judgment against Porter.

Objection is made to the appointment of a receiver for the defendant corporation by the trial court in open court after the trial was concluded. This objection is without substantial merit and the action of the trial court in appointing a receiver will not be disturbed.

The property mortgaged by the corporation was clearly insufficient security for the debt of the plaintiff, and in view of the disclosure made at the trial tending to show that the property and assets of the corporation were being mismanaged, there was not, in our judgment an abuse of discretion on the part of the trial court in appointing a receiver for the corporation. Moran v. Park, 93 Okla. 201, 220 Pac. 589.

The action of the trial court, in so far as it undertook to render any judgment in favor of the plaintiff and the Revere Stockholders Oil Corporation against J. B. Porter, and in favor of the intervening stockholders against J. B. Porter, is reversed with directions to dismiss the petition or plea of the intervening stockholders and the petition of the plaintiff in so far as any liability is asserted against the defendant Porter. In all other respects the judgment of the trial court is affirmed.

By the Court: It is so ordered.