WATTS v. ELMORE.

No. 32267. Sept. 17, 1946

Rehearing Denied Jan. 21, 1947.

*176 P. 2d 220.*

142

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for plaintiff in error.

Valjean Biddison and Floyd L. Rheam, both of Tulsa, for defendant in error.

OSBORN, J. This is an action for damages for breach of contract, brought by plaintiff Elmore against defendant Watts. The trial court overruled defendant's demurrer to plaintiff's evidence, denied his motion for a directed verdict, and upon submission of the case to the jury verdict was returned for plaintiff. From judgment against him on the verdict, and the overruling of his motion for new trial, defendant appeals.

The facts pertinent to the questions presented are that plaintiff, a broker living in Stillwater, procured from the owners the exclusive authority or right to dispose of 17 2/9 acres of mineral interests in a tract of land in Payne county, for $225 per acre net to them. This exclusive authority, which was in writing, terminated July 25, 1940. On July 24, 1940, one day before the written authority expired, defendant, a resident of Tulsa, executed and delivered to plaintiff a proposal, in the form of a letter, to purchase such mineral interests, upon which letter plaintiff endorsed his acceptance. The letter, with the endorsement, is as follows:

"M. H. Watts
Oil Producer - Investments
Ritz Building
Tulsa, Oklahoma
July 24, 1940

"Mr. George A. Elmore
"Stillwater, Oklahoma

"Re: Mid-Continent Johnson royalty
SE/4 Sec. 2-17N-1E, Coyle Pool,
Payne County, Oklahoma
Wilcox Sand Production

"I hereby agree to buy from you up to 21 acres of the above royalty for $237.50 per acre subject to examination and approval of title by my attorney or myself.

"Deeds to be made in blank. Transfer orders to date July 1, 1940. Draw draft on me with papers through First National Bank, Tulsa, Oklahoma.

"Please notify me 48 hours before papers reach my bank so that I can examine title through Mid-Continent Petroleum Corporation land department.

"Please sign below.

"Yours truly,
"(Signed) M. H. Watts"

"I hereby agree to the above Purchase Order and agree to deliver said royalty.

"(Signed) George A. Elmore."

Thereafter, and on the same day, defendant signed and delivered to plaintiff another letter, as follows:

"M. H. Watts
Oil Producer - Investments
Ritz Building
Tulsa, Oklahoma
July 24, 1940

"Mr. George A. Elmore,
"Stillwater, Okla.
"Dear Sir:—

"You are to draw draft on me in the sum of $250.00 per acre. $237.50 is the purchase price and $12.50 is commission to you. I am,

"Yours truly,
"M. H. Watts."

On July 30, 1940, plaintiff drew a draft on defendant for $4,444.44, the agreed price of the mineral interests. This draft, with mineral deeds and transfer orders attached, all properly executed, were received by the First National Bank & Trust Company of Tulsa, the drawee bank, on July 31, 1940, and held by it until August 12, 1940, when the draft was recalled.

Thereafter the owners sold the mineral interests through another broker, and plaintiff sought in this action to recover the loss he sustained because of defendant's refusal to complete the purchase thereof.

Defendant first contends that the letters above set forth do not constitute a contract in that they do not specify what kind of deeds and transfer orders were to be made, and for the further reason that the letters provide that the purchase price is $237.50 per acre, whereas plaintiff in his petition alleges it was $250 per acre.

This contention is devoid of merit. Both parties were familiar with the form of deeds and transfer orders usually used in the transfer of mineral interests, and if defendant had desired special forms he should have so specified. The only complaint as to the deeds is that they provided that the interest sold was subject to an oil and gas lease of record, and defendant knew that the land was leased to Mid-Continent Petroleum Corporation. Defendant testified that the transfer orders were made out to the wrong oil purchasing company, but this was denied by plaintiff, and was a question for the jury. As to the price defendant was to pay, the letter last above set forth, which was supplemental to or amendatory of the first letter and must be considered with it, clearly shows that the price to be paid by defendant was $250 per acre.

Defendant also asserts that the 48-hour notice specified was not given. But in his testimony he admits that he received the notice the day the draft arrived at the Tulsa bank, and that on August 5th plaintiff and one of the owners came to his office in Tulsa and insisted that he close the deal. The bank records showed that the draft was not recalled until August 12th. Therefore the fact that the notice was not given 48 hours before the draft was sent to the Tulsa bank in no wise prejudiced defendant.

In Webb v. Moran, 186 Okla. 140, 96 P. 2d 308, we said:

"A contract is not void for uncertainty, even though it does not specify all the details with respect to its subject matter, if, according to its terms, it is sufficiently definite so that it can be ascertained with a reasonable degree of certainty what the parties intended to agree to."

Measured by this rule, the two letters set forth above sufficiently reflect an agreement by defendant to purchase at least 17 2/9 acres of the mineral interests under the described land, subject to the Mid-Continent lease, for $250 per acre, the deeds and transfer orders to be sent to the bank with draft attached, defendant to have 48 hours after notice of the receipt of the draft by his bank in which to examine title, with the right to refuse to complete the purchase only in the event title was disapproved. The trial court did not err in so holding.

Defendant next contends that plaintiff failed to prove merchantable or marketable title in the grantors of the mineral deeds. Plaintiff, at the trial, introduced in evidence a certified copy of a patent to Alfred Johnson conveying the described land, and a certified copy of the decree of distribution entered by the county court of Payne county in the matter of the estate of Alfred Johnson, wherein the grantors in the mineral deeds tendered to defendant were decreed an interest in minerals under the described land in excess of the amount which the said deeds conveyed. The decree, in the absence of any attack upon it, must be considered valid. Riley v. Jones, 153 Okla. 64, 4 P. 2d 1070. The two instruments so put in evidence constituted prima facie evidence of perfect title in the grantors in said deeds. Gentry v. McCurry, 134 Okla. 182, 273 P. 222. There is no showing that the proceedings leading up to the decree were defective. The fact that defendant did not examine them may not be charged against plaintiff, since he was under no obligation to furnish an abstract.

It was the obligation of defendant, within the 48-hour period which he allowed himself for that purpose, to ascertain the condition of the title. This he did not do. He does not now point out any defects in the title. We consider the showing made by plaintiff sufficient. Defendant offered the testimony of a lawyer on the theory that, if permitted to testify, such witness would state that the showing made was not sufficient. The offer was properly rejected. Whether the evidence made out a prima facie case was a matter which the trial court had decided when he passed upon the demurrer to plaintiff's evidence.

Defendant's contention that plaintiff had no authority to collect the proceeds from the sale, and that therefore defendant was not required to pay the draft, presents a question not raised by the pleadings or evidence, and is contrary to the terms of the agreement between the parties. So far as the record shows, it was not raised in the trial court, and will not be considered here. Testerman v. Burt, 143 Okla. 220, 289 P. 315.

Defendant next contends that the trial court erred in refusing to dismiss the action because of the failure of plaintiff to comply with the provisions of the intangible tax law, 68 O.S. 1941 § 1501 et seq. We think the claim of plaintiff was clearly an unliquidated demand, as defined in Lumberman's Supply Co. v. Neal, 189 Okla. 544, 119 P. 2d 1017, in that it was uncertain both as to existence and amount. Therefore the intangible tax law did not apply.

Defendant asserts that the trial court erred in permitting plaintiff to testify to an oral extension of his authority to sell the mineral interests. Since the evidence shows beyond doubt that the owners recognized the authority of plaintiff at least up to August 5th, when defendant testified that one of them came to his office with plaintiff and sought to induce him to complete the purchase, we think the error, if error it was, was harmless.

Defendant next contends that the trial court should have declared a mistrial because of the misconduct of the attorney for plaintiff. The evidence discloses that during the trial the attorney and one of the jurors went into a coffee shop near the courthouse and sat at the counter together while they consumed coffee, and that while so engaged they talked together. Each paid for his own drink, and both, as well as other witnesses, testified that their conversation was "idle chatter" having no relation to the case, or any issue therein. The trial court heard the testimony of all the witnesses, and the juror, who was a minister, testified that the incident in no wise influenced him in favor of plaintiff or against defendant. The trial court denied the motion, stating that he was convinced that the incident had no influence on the verdict. The verdict was concurred in by only nine jurors, and the juror who was so associated with plaintiff's attorney was one of those concurring in the verdict.

While the conduct of plaintiff's counsel might reflect indiscretion, a careful study of the evidence leads us to the conclusion that the trial court did not err in refusing to grant a mistrial. The association between the attorney and juror was in a public place, where their conversation was heard by others; there was no treating or entertaining, as in the cases cited by defendant; the subject of the conversation was trivial, and far removed from any question involved in the action, and the juror stated positively that it had absolutely no influence on his verdict.

The cases cited by defendant are cases wherein the party or his attorney treated or entertained one or more of the jurors, or did them a special favor or service. Garvin v. Harrell, 27 Okla. 373, 113 P. 186; Jones v. Frank, 62 Okla. 26, 161 P. 795; 55 A.L.R. 756, note No. 4, But where a litigant or his attorney indulges in a casual conversation, not involving the case on trial, with one or more members of the jury, the rule above announced does not apply, unless it be shown that the juror's verdict

was influenced thereby. McKelvey v. Buell, 110 Okla. 158, 236 P. 898; 55 A.L.R. 751, note 2. The trial court did not err in refusing to declare a mistrial.

Defendant's last two contentions may be disposed of together, since they involve the refusal of the trial court to give instructions required. We hold that the trial court properly refused to give to the jury an instruction as to what constituted a contract. This for the reason that whether or not the two letters in the case at bar were sufficient to constitute a contract between the parties was a question of law for the court. J. Rosenbaum Grain Co. v. Higgins, 40 Okla. 181, 136 P. 1073.

But we think the trial court erred in refusing to instruct the jury that plaintiff could not recover from defendant any sum in excess of $222.12. By the terms of the contract between the parties the amount of the purchase price which was to be received by plaintiff, in event the deal was consummated, was specifically fixed at $12.50 per acre. In Danciger Oil & Refining Co. v. Wayman, 169 Okla. 534, 37 P. 2d 976, 97 A.L.R. 854, we held that a prospective purchaser, contracting with the broker with knowledge of the commission which he was to receive if the purchase was consummated, was liable, upon default, for the amount of such commission. In the instant case the contract amounted to an agreement by defendant to purchase the mineral interests and to pay to plaintiff a certain amount as commission, which amount was agreed to by plaintiff. The trial court should have limited the amount of plaintiff's recovery to the amount specified in the agreement; and its refusal to give the instruction requested by defendant, limiting plaintiff's recovery to that amount, was error.

The judgment is modified by reducing the amount of plaintiff's recovery to $222.12, with interest thereon at 6 per cent from May 27, 1943, and costs, and as modified is affirmed.

Plaintiff in his brief asks for judgment against National Mutual Casualty Company, surety on the supersedeas bond filed by defendant.

It is therefore ordered that plaintiff, George A. Elmore, have and recover from the defendant, M. H. Watts, and his said surety, National Mutual Casualty Company, the sum of $222.12, with interest at 6 per cent per annum from May 27, 1943, and for the costs of this action, for all of which let execution issue out of the trial court.

Modified and affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, and DAVISON, JJ., concur.