60 So.2d 833

**BOOTHTON COAL MINING CO. et al. v. TENNESSEE COAL, IRON & R. CO.**

**7 Div. 157.**

Supreme Court of Alabama.

Oct. 16, 1952.

Sadler & Sadler, Birmingham, and Ellis & Fowler, Columbiana, for appellants.

Burr, McKamy, Moore & Tate, Birmingham, Paul O. Luck, Columbiana, and Andrew J. Thomas, Birmingham. for appellee.

STAKELY, Justice.

This is an appeal by Boothton Coal Mining Company, a corporation, and others, from a decree overruling their demurrers to a bill of complaint, in equity, filed by Tennessee Coal, Iron and Railroad Company, a corporation (appellee). The question presented by the ruling is whether there is equity in the bill. The allegations of the bill may be summarized as follows.

Tennessee Coal, Iron and Railroad Company is a simple contract creditor of Boothton Coal Mining Company. They entered into a contract on July 23, 1947 by the terms of which Boothton Coal Mining Company agreed to pay to Tennessee Coal, Iron and Railroad Company a minimum monthly royalty of $1,000 per month for the right to mine coal on the lands of the Tennessee Coal, Iron and Railroad Company for a ten year period thereafter. Boothton Coal Mining Company was dissolved on October 9, 1950 pursuant to the provisions of § 104, Title 10, Code of 1940. The instrument reciting that the corporation shall be dissolved pursuant to the aforesaid statute was executed by the individual respondents to the bill (other appellants here), representing themselves as the holders of the entire capital stock of Boothton Coal Mining Company.

At the time of the filing of the present bill, under the terms of the contract, Boothton Coal Mining Company owed to Tennessee Coal, Iron and Railroad Company the sum of $7,000 and additional payments of not less than $1,000 will become due and payable each month until June 30, 1957.

On November 9, 1950, there was filed in the office of the probate judge an instrument dated November 9, 1950, which recited that certain real estate therein described, which formed a part of the assets of Boothton Coal Mining Company, was thereby conveyed by Boothton Coal Mining Company to the individuals named therein (other appellants here), who were the stockholders of the corporation, there being conveyed to each an undivided interest in the aforesaid real property in proportion to which they held stock in the corporation. It was also recited in the instrument that personal property, the description of which is unknown to the complainants, also had been conveyed by the corporation to the aforesaid individuals.

It is further alleged that upon dissolution of Boothton Coal Mining Company, a corporation, those respondents as were directors of the corporation at such time became trustees of the property and assets of the corporation, charged with the duty and with full power to settle the corporate affairs of the corporation, including proper distribution of its property and assets, and to such end to pay the obligations incurred or assumed by the corporation, including the obligation assumed by it under the contract with Tennessee Coal, Iron and Railroad Company, to which reference has been made.

It is further alleged that those respondents who were directors of Boothton Coal Mining Company at the time of the dissolution thereof have failed to make proper settlement of the corporate affairs of the corporation, including proper distribution of the property and assets of the corporation, in that they have failed to apply properly the property and assets of the corporation to the payment of debts thereof and more particularly the debt or claim of Tennessee Coal, Iron and Railroad Company as was their duty under the terms of the trust imposed on its property and assets and have therefore failed to administer properly the trust imposed on the property and assets of the corporation.

It is further alleged that upon conveyance by the Boothton Coal Mining Company, a corporation, to those respondents who were stockholders of the corporation of the real and personal property which form either all or a part of the assets of the corporation, such respondents became trustees of the property and hold such property as well as the proceeds of any such property which has been sold or otherwise disposed of in the capacity of trustees for the benefit of creditors of Boothton Coal Mining Company, including the complainant, charged with the duty and with full power to make such distribution of such property and assets and to such end to pay the obligations incurred or assumed by the corporation, including the obligation assumed by it under the contract which has been referred to, including the indebtedness to the Tennessee Coal, Iron and Railroad Company based thereon and that such respondents thereby became jointly and separately liable to the creditors of Boothton Coal Mining Company, including the complainant, to the extent of the property which constituted the

708

part of the assets of Boothton Coal Mining Company coming into their hands.

It is further alleged that the identity of such of the respondents as were directors of Boothton Coal Mining Company at the time of the dissolution thereof are unknown to the complainant, as well as the amount, description and location of the property and assets of the corporation at the time of the dissolution, and that the individual respondents should be required to discover which ones of them were directors of Boothton Coal Mining Company at the time of its dissolution and should also be required to discover the amount, description and location of the property and assets of the corporation at the time of its dissolution, the present location of the property and assets, the disposition made thereof as well as the amount, description and location of the proceeds of any of such property or assets which have been sold or otherwise disposed of since the dissolution. The bill of complaint further alleges that the exact amount and nature of the property and assets of Boothton Coal Mining Company which came into the hands of the individual respondents, who were stockholders of the corporation at its dissolution, is unknown to the complainant and the bill then alleges in effect that the respondents in this category should be required to make discovery in a manner similar to discovery which should be required of those respondents who were directors at the time of dissolution to the extent and in the amount as alleged.

The bill of complaint further alleges that an accounting is necessary and should be had under the direction of the court to ascertain the amount, description and location of the property and assets of Boothton Coal Mining Company at the time of its dissolution, the amount, description and location of such property and assets which came into the hands of each individual respondent upon the dissolution of the corporation or at any time subsequent thereto, the present location of such property and assets, the disposition made thereof as well as the amount, description and location of the proceeds of such property and assets as may have been sold or otherwise disposed of subsequent to the dissolution.

The bill of complaint contains a list of interrogatories which it is requested that the respondents be required to anwer in order to accomplish the discovery sought in the bill of complaint, as hereinabove referred to.

The prayer of the bill, in brief, seeks an adjudication that the Tennessee Coal, Iron and Railroad Company is a creditor of Boothton Coal Mining Company in the sum of $7,000 with any additional amounts which the court may find to have accrued under the contract to the date of its decree, together with court costs and interest, and that the same is due, owing and should be paid to complainant and that property and assets of Boothton Coal Mining Company in the hands of or subject to the control of the individual respondents or which came into their hands subsequent to the dissolution of the corporation, together with the proceeds of any of the property and assets of Boothton Coal Mining Company which has been sold or otherwise disposed of since coming into their hands be impressed with and held in trust by such respondents for the benefit of Tennessee Coal, Iron and Railroad Company and any other creditors of Boothton Coal Mining Company who come in and make themselves parties to the cause. It is further prayed that the trust shall be administered under the direction of the court, the corpus and proceeds thereof to be subject to the satisfaction of the debt decreed to be due and payable to the complainant and that the jurisdiction of the cause and of the parties be retained by the court until June 30, 1957, the date specified for the termination of the contract which has been referred to, and that such trust shall continue to be administered under the direction of the court until such time and the corpus and proceeds of the trust to be subjected to the satisfaction of any additional debt which the court might determine shall accrue under the contract and become due and payable thereunder.

Section 110, Title 10, Code of 1940, provides as follows:

"Corporations whose charters expire by limitation and which are dissolved by forfeiture or by any other cause,

except by judicial decree, exist as bodies corporate for the term of five years after such dissolution, for the purpose of prosecuting or defending suits, settling their business, disposing of their property, and dividing their capital stock, but not for the purpose of continuing their business; and the directors shall be trustees thereof with full power to settle their affairs, collect their debts, sell and convey the property and divide the moneys and other property among the stockholders, after paying its debts; and may act under the by-laws of the corporation, prescribe the terms and conditions of the sales of the property of the corporation, sue for and recover the debts and property of the dissolved corporation, in the corporate name; and are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands. On application to the circuit court or other court at the principal place of business of the corporation, such trustees may be continued for such length of time beyond such five years as may be necessary for the purpose in this section set forth."

The foregoing code section is a reproduction without material change of § 53, Act approved October 2, 1903, Acts of Alabama of 1903, pp. 310, 340. The foregoing section of the statute was placed without material change in the Code of Alabama of 1907 as § 3516, was brought forward without change as § 7069 in the Code of Alabama of 1923 and was finally brought forward without material change as § 110, Title 10, Code of 1940.

In the case of Pankey v. Lippman, 187 Ala. 199, 65 So. 771, 772, the appeal was from a decree overruling demurrers to the original bill. According to the allegations of the bill in that case—and we have the original record of that case before us—it was shown that the complainant was a simple contract creditor of a corporation called Tom-Pankey Brokerage Company, and that the claim arising out of the breach of an executory contract of purchase and sale resulted in damages to the extent of $1,500. The bill in that case also showed that after the contract was made the stockholders of the corporation caused its dissolution by consent, according to the statute. The bill then proceeds on two theories, the first, the theory here under consideration, being that under the statute, Code, § 3516, whereby corporations are dissolved otherwise than by judicial decree, they are accorded a continued existence for a limited period of time for certain purposes consistent with a full and final adjustment of the affairs of the corporation and the directors of the corporation are constituted trustees to settle corporate business, collect debts, sell and convey property and divide money and property among the stockholders after paying its debts. Pankey v. Lippman, supra. The bill in that case, filed after such statutory dissolution, avers that the respondents who were directors came into possession of the assets of the corporation and seeks the satisfaction of the demand of the complainant on the basis of an accounting between director—trustees and the enforcement under the practices of equity of their liability in the premises. The court in Pankey v. Lippman, supra, among other things, said:

"The legal effect of Code, § 3516—manifestly so intended by the lawmakers—is to constitute the property and rights of a corporation dissolved otherwise than by judicial decree a trust fund, with the directors as trustees, to effect the righteous purposes set down in the statute. One of these is to pay the obligations incurred, assumed, or imposed during the active life of the corporation. Given a creditor who may invoke the powers of a court of equity to declare, govern, and enforce rights and remedies attaching or affecting a trust estate or a trust function, a bill cannot be without equity that would invoke equity's authority to promote and effect the due and just administration of a trust thus established, for the purposes the statute (section 3516) plainly intends. As for property, the subject of the trust estate, the statute (section 3516) expressly provides:

"The trustees 'are jointly and severally liable to its creditors and stockholders to the extent of the property which may come into their hands.'

"The bill carries sufficient averments to invoke the liability thus declared. If the complainants are creditors of a class who may implead the director-trustees in the premises, their bill shows them to be parties with a particular concern and interest in the proper administration of the trust existing when the bill was filed.

"It is insisted that the complainants, holding the claim the bill describes, are not creditors of a character allowed to invoke equity to their relief. It is urged that they are not judgment or lien creditors and that their demand is for unliquidated damages.

"Under the terms of the statute (section 3516) and in accord with its obvious object, the complainants are creditors within its purview, notwithstanding their demand is contingent and arises out of the breach of contract. * * * The reduction of such a claim to judgment is not a condition to the creditor's right to invoke equity's power to administer the trust, of and in which the creditor is a statute-recognized beneficiary. The statute provides for no such restriction as respects the character of the creditor's demand. The courts cannot interpolate with the result that the object of the statute would be so restricted."

It is insisted by the appellant in the case at bar that the foregoing decision in Pankey v. Lippman, supra, is based on authorities cited therein which do not support the holding of the court and furthermore that the allegations of the bill in that decision are materially different from the allegations of the bill in the case at bar. We have examined with care the authorities cited by this court in the foregoing decision and while some of the authorities may not appear to support the holding of the court, others do. We see no necessity for going into that feature of the argument beyond making this statement.

It is certainly true that the statute, which was originally taken from the Act of 1903, has been brought forward from code to code without material change and now appears as § 110, Title 10, Code of 1940. The principle is well established that where a statute after interpretation by this court is re-enacted in a subsequent code or codes without material change, such constitutes a legislative adoption of such interpretation. Browder v. Gunter, 220 Ala. 407, 125 So. 646; Allison-Russell-Withington Co. v. Sommers, 219 Ala. 33, 121 So. 42; Bennett v. Bennett, 224 Ala. 335, 140 So. 378. We, therefore, say that the interpretation by this court in the case of Pankey v. Lippman, supra, of § 3516 of the Code of 1907, which has been reproduced without material change in subsequent codes of this state, as has been shown, is the interpretation which this court should now put upon § 110, Title 10, Code of 1940.

In substance the principle is that a simple contract creditor may maintain a bill in equity against the directors of a dissolved corporation for the purpose of invoking the authority of an equity court to govern or enforce the due and just administration of the trust in the assets and property of the corporation, imposed upon the directors as trustees, to the end that the claim of such creditor might be adjudicated and paid out of the trust fund.

It is worthy of note that in the subsequent case of 48th Street Investment Co. v. Fairfield-American Nat. Bank, 223 Ala. 44, 134 So. 803, 804, which cites Pankey v. Lippman, supra, the bill was filed by a simple contract creditor. In the opinion in this last-mentioned case this court, among other things, said:

"The bill was for discovery and accounting. * * *

"In the capital stock and other property of a corporation, a trust relation is created for creditors and stockholders. * * *

"And a bill to require trustee directors of a corporation that has been dissolved to make discovery and account-

ing has equity. \* \* \* Pankey v. Lippman, supra; \* \* \*."

We consider that the allegations of the bill of complaint in the case of Pankey v. Lippman, supra, are substantially similar to the allegations in the case at bar. It is true that in Pankey v. Lippman, supra, the allegation is made that T. M. Pankey, R. H. Holmes and C. B. Johnson failed to apply said property (the assets of the corporation) to the payment of the debts of the corporation but divided the same among themselves or converted the same to their own use and that said property was so diverted by the said Pankey, Holmes and Johnson in violation of their trust. In the present bill it is alleged in effect that the real and personal property of the dissolved corporation has been conveyed to the respondent stockholders in proportion to which they held stock in the corporation without payment of the debts of the corporation and particularly the debt owing to complainant. We consider that these allegations substantially follow the allegations of Pankey v. Lippman, supra, because the conveyance of real and personal property of a corporation to the stockholders thereof upon dissolution by agreement of the stockholders without payment of corporate debts, each receiving an undivided interest therein in proportion to which they hold stock in the corporation, is in effect, in a case of this kind, the same as an allegation of a conversion of the property to the use of the stockholders. It is not necessary in order to give equity to the bill that there be an allegation of insolvency or concealment or transfer with fraudulent intent. It is enough that the corporation, while owing an unpaid debt or debts has been dissolved by agreement between the stockholders and the property owned by the corporation has been conveyed or turned over to the stockholders. The result is that the directors and also the stockholders, as we shall see, become trustees and in such capacity hold the property of the corporation as trust property for the benefit of creditors. The jurisdiction of equity is accordingly invoked to administer the trust through the aid of discovery and accounting and the general power of the equity court to bring all the proper parties before the court and of ascertaining not only the full amount of the debt or debts but also the mode of contribution and the cross-equities or liabilities which may be required for the proper adjustment of the rights of all the parties. Adams v. Perryman & Co., 202 Ala. 469, 80 So. 853; Carns v. Filler, 218 Ala. 100, 117 So. 672; Story's Equity Jurisprudence, 14th Ed., Vol. 3, § 1660; Perry on Trusts and Trustees, 7th Ed., Vol. I, § 242.

In the cases of Pankey v. Lippman, supra, and 48th Street Investment Co. v. Fairfield-American Nat. Bank, supra, only the status of the directors of a dissolved corporation and the right to maintain a bill in equity against them was considered. In the case at bar, however, the bill of complaint is directed not only against those individual respondents who were directors of the dissolved corporation at the time of its dissolution, but against all of the individual respondents who as stockholders of the dissolved corporation received into their possession property and assets of the corporation on the dissolution thereof. In the case of Kelly v. Andalusia Brick Co., 222 Ala. 203, 131 So. 559, 560, this court, among other things, said:

"The right of creditors of a corporation to subject in equity its assets to its debts, after dissolution, in preference to the claims of stockholders, is now not questioned. The principle is stated in various forms of expression, but leads to the same result. If property of the dissolved corporation has come into possession of stockholders with corporate debts remaining unpaid, they become quasi trustees of such property, and subject to the equitable right of such creditors to subject it to their debts. This right exists so long as the property may be traced into possession of one who is not a bona fide purchaser. \* \* \*"

We have reached the conclusion that there is equity in the bill in the case at bar and the court acted correctly in overruling the demurrers thereto.

Affirmed.

LIVINGSTON, C. J., and BROWN and LAWSON, JJ., concur.