WEWOKA PETROLEUM CORPORATION, a dissolved Oklahoma corporation; Carl Stolle, G. H. Strang and John M. Baker, successors to the assets of Wewoka Petroleum Corporation, a dissolved Oklahoma corporation, Plaintiffs in Error,

v.

Charles V. GILMORE, Defendant in Error.

No. 37517.

Supreme Court of Oklahoma.

Oct. 1, 1957.

Rehearing Denied Nov. 26, 1957.

Application for Leave to File Second Petition for Rehearing Denied Dec. 24, 1957.

Johnson, Gordon & Cotter, and Ted D. Foster, Jr., Oklahoma City, for plaintiffs in error.

Savage, Gibson, Benefield & Shelton, Oklahoma City, for defendant in error.

PER CURIAM.

This action was initially instituted against the individuals who comprised a committee of stockholders as successors to the assets of the Wewoka Petroleum Corporation, which assets had been transferred to them to effectuate a distribution upon dissolution of the corporation. Henceforth, the parties will be designated according to their status in the trial court: the defendant in error, as plaintiff; the Wewoka Petroleum Corporation, a dissolved Oklahoma corporation, as the corporation; and

the individual defendants comprising the committee, as defendants.

After the action was commenced, there being diversity of citizenship between plaintiff and defendants, defendants caused the case to be removed to the federal court. There the defendants objected to the failure of plaintiff to make the corporation a party defendant. Their motion to dismiss was sustained by the court upon the defendants' theory that the corporation was an indispensable party. The pertinent portion of the court's order is as follows:

"* * * after consideration of the briefs, the Court is of the opinion that the motion is good and should be sustained. In the brief filed herein on behalf of the plaintiff, plaintiff requests that, in the event the motion is sustained, he be allowed to file an amended complaint making the Wewoka Petroleum Corporation a party defendant. The court is of the opinion that the plaintiff's request should be granted, and the effect of the making of the Wewoka Petroleum Corporation a party will be determined after the amended complaint is filed and the Wewoka Petroleum Corporation is a party defendant.

"It is therefore ordered that the defendants' Motion to Dismiss be and the same is sustained.

"It is further ordered that plaintiff is allowed fifteen days in which to file an amended complaint making the Wewoka Petroleum Corporation a party defendant."

The corporation was made a party defendant and thereafter, diversity no longer existing, the case was remanded to the state court in which it had originated.

The plaintiff's amended petition alleges that the corporation has been dissolved voluntarily and all its assets transferred to the defendants to distribute to holders of notes of the corporation and thereafter to the stockholders in liquidation of their capital stock; that defendants, the shareholders' committee, own an interest in producing oil and gas leases and the proceeds of oil purchased from the operator thereof; that plaintiff was employed by the corporation prior to its dissolution to sell the leases and that pursuant thereto he procured a purchaser to whom the leases were sold; that plaintiff's fee was not agreed upon but that 5% of the purchase price of $150,000 is a reasonable commission; that the corporation and the purchaser executed a valid and enforceable contract of sale upon which plaintiff's fee became due, but that payment has been refused upon demand; that in the process of dissolution of the corporation plaintiff's debt was not paid and he was not given notice of such dissolution; that he did not learn of the dissolution until approximately four months afterwards. This action was filed shortly after plaintiff alleged he first had knowledge of the dissolution. The defendant's answer concedes their status as a committee of stockholders and successors to the corporate assets, generally denies the plaintiff's allegations, asserts that the Federal Court dismissal was final as to them, and that the claim is an unliquidated demand which has not been reduced to judgment against the corporation as a necessary prerequisite to an action against defendants. The corporation pleaded a general denial and admitted its incorporation and dissolution as alleged, denied a contract with plaintiff, admitted the execution of a contract of sale of the leases with the purchaser as alleged, but further alleged that the contract was never consummated because of a defect in its title known to plaintiff. It also pleaded that plaintiff was estopped to claim a fee on the contract by virtue of certain letters sent to the corporation by him, and that his claim is barred because not presented prior to its dissolution.

The evidence sufficiently discloses that, after preliminary negotiations, plaintiff was authorized to sell the leases for the corporation; that there was no agreement as to the amount of his commission; that he procured a purchaser, a Mr. Rose, with whom the corporation executed a contract

of sale of the leases for $150,000; that the contract of sale expressly provided that the purchaser would drill two additional wells, that the leases were subject to an override royalty interest in a Mr. Ligon from whom the corporation had purchased the leases, and that the corporation would pay plaintiff's commission; that Mr. Rose ultimately refused to consummate the contract because of an alleged title defect consisting of some obligation which Ligon was asserting by an instrument filed for record; that the asserted obligation due Ligon required the drilling of one or two wells on the leases; that the corporation acceded to the purchaser's refusal to comply with the contract and immediately, without notifying plaintiff, sold the leases to its original grantor, Mr. Ligon, for the same price as that contained in the Rose contract; that no commission was paid plaintiff; that shortly afterwards the corporation voluntarily dissolved and transferred its assets to defendants to complete its liquidation. Pending the action the trial court restrained Ligon and the oil-runs purchaser from disposing of the funds held by them to the credit of the defendants. After judgment for plaintiff, the corporation and defendants executed a supersedeas bond; and the court, upon stipulation and request of the parties, thereupon dissolved the restraining order and released the impounded funds to defendants. We will discuss the various assignments of error and any further pertinent facts in the order that the assignments of error are presented by the briefs.

Even though seeming to acknowledge that an order of remand is not reviewable (28 U.S.C.A. § 1447(d)), the defendants assert that the federal court lost jurisdiction over them by its order of dismissal which could not be re-established by the remand. We must, of course, agree that we cannot review the order of remand, and so the argument on the correctness of that order when diversity was destroyed cannot prevail. Furthermore, we do not attach the significance attributed by the defendants to the federal court's order

made on the motion to dismiss for lack of an indispensable party. It seems to be no more than a provisional alternative order with which the plaintiff complied by an amendment of his complaint. Under the federal rules leave to amend pleadings is freely granted; and in that regard as to this problem, it has been noted that where it appears that the objection may be obviated by amendment, the court may dismiss with leave to amend. See Barron & Holtzoff, Federal Practice and Procedure, Ch. 7, Sec. 444. This, we think, is the purport of the order upon which defendants now urge that the action terminated. Contrary to the argument that dismissal was mandatory, in a removed action, remand was the proper order when diversity was destroyed. Donaldson v. Werblow, D.C., 140 F.Supp. 244; Clark v. Safeway Stores, Inc., D.C., 117 F.Supp. 583. This situation is not unlike State ex rel. Merritt Oil Corporation v. District Court of Sixth Judicial District in and for Converse County, 44 Wyo. 437, 13 P.2d 568, 572, in which that court refused to deny the state court's jurisdiction after remand upon the alleged lack of jurisdiction in the federal court to make the order. The rationale of that decision may be expressed in the following quotation from the opinion:

"* * * What the federal court did in the case at bar, after it was removed, was pursuant to its jurisdiction. Bogart v. Southern Pac. Co., 228 U.S. 137, 33 S.Ct. 497, 57 L.Ed. 768. That jurisdiction included the power to remand. * * *"

Pacific Gas & Electric Co. v. Fibreboard Products, Inc., D.C., 116 F.Supp. 377, cited as controlling and requiring dismissal, is clearly distinguishable. That case involved merely the discretion to permit an amendment as to other than indispensable parties, and not the jurisdiction to order remand.

Next, it is claimed that the failure of the plaintiff to present this claim to the corporation prior to its voluntary dissolution is an effective bar to its allowance at

this time. This contention is without merit. Our statute on voluntary dissolution, contrary to that of some other states from which defendants cite cases, contains no limitation on or condition precedent to an action on a claim not presented during such a dissolution. Thus the claim is not yet barred as no other statute of limitation is urged as applicable. And although the statute provides that a corporation is dissolved upon the issuance of a certificate to that effect by the Secretary of State, it also provides (sec. 1.188, 18 O.S.1951) that the corporation shall continue to exist for certain limited purposes, among which are "winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect and discharge obligations." Under our statute, corporations do not cease to exist for all purposes on dissolution as was the case under the common law, even though it can no longer carry on its business. The directors are authorized to act for the specific purposes enumerated. Sec. 1.189, 18 O.S.1951. It can be sued on this claim. Had this dissolution been involuntary or under supervision of a court, the statutes applicable in such cases might require a different conclusion concerning the right of plaintiff to subject the corporate assets to his claim. So, in view of our conclusion that the claim is not barred, it is unnecessary to discuss whether or not plaintiff was entitled to a written notice of the dissolution.

We are also asked to reverse the judgment against the individual defendants for failure of the plaintiff to plead and prove that the claim had been reduced to judgment against the corporation prior to this action. The defendants' theory is that this is a creditor's bill against them. In the proceedings to dissolve, the corporation's board of directors, of which the defendants were members and officers, ordered that:

"* * * all liabilities of the corporation, excepting the promissory notes due stockholders, be paid, and that all assets then remaining on hand be distributed to the following committee of three stockholders: (the defendants) and that this corporation thereupon be dissolved and disincorporated.

"Resolved further that said committee above appointed is hereby instructed, as cash is received by them in settlement of the assets held by them, to disburse all such cash received to the holders of the notes of the corporation, * * * and thereafter to the stockholders of the corporation, pro rata, in final liquidation of their capital stock; * * *"

It appears that the assets were transferred to the defendants as directed and that when the corporation was dissolved, it had no assets remaining for the payment of any liabilities and had made no provision for the payment of its obligations as the statute requires. 18 O.S.1951 § 1.184. Throughout our statutes on dissolution it is provided that distribution of the corporation's assets shall be made only "after paying or adequately providing for the payment of all its obligations." This is in keeping with the universal rule that the corporate assets comprise a "trust" for the payment of its liabilities before any distribution may be made to the shareholders. This rule is expressed in Fletcher's Cyclopedia of the Law of Corporations, Vol. 16, sec. 8160, as follows:

"This equitable right of creditors of a dissolved corporation to have its assets applied to the satisfaction of their claims is superior to any rights of stockholders or their assignees. * *"

Whatever may be the legal status of these defendants as such committee in relation to the dissolved corporation or its shareholders, it is abundantly clear that under these circumstances it was not necessary to reduce the plaintiff's claim to judgment before proceeding to enforce it against the corporate assets in their possession. It would seem that the reasons for the denial of equitable jurisdiction as expressed by the rule of Porter v. Rott, 116 Okl. 3, 243 P. 160, upon which defendants rely, are more than amply satisfied by the circumstances of this case. To quote again from

**290**

Fletcher, Cyclopedia on the Law of Corporations, supra:

"Where the statutes continue the existence of a corporation after dissolution for the purpose of settling its business, the corporate property becomes a trust fund, and a creditor—and this includes one whose demand is contingent and arises out of a breach of a contract—may sue, without obtaining a judgment of his claim, * * *"

So, too, in Boothton Coal Mining Co. v. Tennessee Coal, Iron & Ry. Co., 257 Ala. 705, 60 So.2d 833, 837, where it was said:

"'* * * The reduction of such a claim to judgment is not a condition to the creditor's right to invoke equity's power to administer the trust, of and in which the creditor is a statute-recognized beneficiary. * *·*'"

To the same effect is McWilliams v. Excelsior Coal Co., 8 Cir., 298 F. 884; and Security Savings & Trust Co. v. Portland Flour Mills Co., 124 Or. 276, 261 P. 432. Porter v. Rott, supra, recognized that the rule was not without limitations and the situation in that case is not the same as here.

■ The defendants' claim of estoppel against plaintiff is based upon two or three letters from him to the corporation's president in which he sets out the claim for a commission and urges payment. These letters are quite lengthy but may be summarized by the following extract from one of them:

"* * * my attorney feels that I am legally, and more than morally, entitled to a commission from this sale, even though the same ended up by J. A. Ligon being the purchaser."

Defendants assert that plaintiff's action is for a commission on the contract of sale to Rose while his claim prior to instituting the action was for a commission on the sale to Ligon, thus precluding a recovery on the Rose claim. We do not necessarily agree with defendants' interpretation of these letters; but, even so, the elements of an estoppel are clearly lacking. There is absolutely no showing that there was any change of position by defendants taken in reliance on their interpretation of the letters or that they were prejudiced thereby. Furthermore, the cases cited involving the doctrine of election of remedies are not in point. This is not an election of remedies situation.

■ The next assignment of error deals with the trial court's action restraining the disposition to the defendants of the money in the hands of the lease operator and oil purchaser. However, this proposition is now moot as this order has been dissolved upon the posting of bond by the defendants pursuant to a stipulation of the parties. Thus any irregularities in this regard will not be considered. Davis v. Little, Okl., 289 P.2d 666. If defendants have wrongfully suffered damage, they have their remedy.

■ It is also insisted that plaintiff cannot recover a commission for the reason that his purchaser refused to fulfill the contract because of a title defect in defendants of which plaintiff knew when negotiating the sale. Initially, on this assignment, we must point out that this action was tried to the court with a jury waived, and if there was any substantial evidence to support the court's judgment, it must be sustained. It is beyond dispute that plaintiff produced a purchaser ready, willing, and able to purchase these leases and with whom the corporation executed a written contract of sale. It is likewise undisputed that the purchaser thereafter refused to fulfill the contract, that the corporation acceded to his refusal and returned his deposit, and that the property was thereupon immediately sold to Mr. Ligon. The reason Mr. Rose gave for refusing to fulfill the sale contract seems to have been an instrument of some nature which Ligon filed for record that dealt with an obligation due him from the corporation. The instrument was not introduced in evidence and the nature of the claim was never clearly explained by the testimony. It seems that Ligon claimed an obligation of further development of some sort arising

out of his original sale of the leases to the corporation. The evidence is conclusive that the corporation's contract of sale to Rose provided for the override royalty retained by Ligon and also provided for the drilling of two additional wells on the leases. The defendant who executed the contract as the corporation president testified that he was of the opinion that the sale contract adequately satisfied the Ligon claim. In addition, in an attempt to satisfy Mr. Rose, two letters from Mr. Ligon were secured which defendant also felt should obviate the title objection. These letters were likewise not introduced in evidence or their contents disclosed. Thus we are presented with the situation of a refusal to pay the agent's commission solely on the basis of a failure of consummation of the sale contract by reason of an alleged title defect which may or may not have been sufficient, so far as the evidence reveals, to render the contract unenforceable and the corporation's consent to its abrogation justifiable as to plaintiff, with the further claim that the agent knew of the alleged defect when offering the property for sale.

It is undoubtedly the rule that a broker is not entitled to a commission where he knows the property must be offered subject to certain defects of title and fails to produce a purchaser ready, willing, and able to purchase under those circumstances. Monzingo v. Bowers, 135 Okl. 225, 275 P. 339. But here, without regard to the sufficiency of the evidence to establish an actual defect in the corporation's title to the leases, the evidence fails to show that plaintiff had knowledge of a defect in the title not contained in the terms upon which the sale contract to Rose was executed. Plaintiff produced a purchaser for the leases on the terms stated to him and which he, and the corporation's president, thought contained all obligations due Ligon. Even after Rose noted his objection to the title, it appears that plaintiff was never apprised of the exact nature of the claim being asserted by Ligon. Furthermore, contrary to the position taken by the defend-ants in this action, he was assured by the corporation's president that the sale contract adequately covered its obligation to Ligon. Unless the broker has knowledge of the defect in title and fails to procure a purchaser willing to accept the property subject to the defect, the rule contended for by defendants has no application. Under the circumstances of this case, the rule applicable has been stated in Yoder v. Randol, 16 Okl. 308, 83 P. 537, 3 L.R.A., N.S., 576, as follows:

"Where a broker has fully performed his undertaking by producing a person ready, willing, and able to purchase his employer's property at the price and upon the terms stipulated, and the landowner has accepted the purchaser so procured and entered into a binding and enforceable contract with him, the broker is entitled to his commission, and his right thereto is not defeated by the fact that the purchaser refuses to consummate the transaction because of a defect in the landowner's title to the property, where knowledge of such defect was not communicated by the employer to the broker at the time of entering into the contract of employment with him."

In the instant action the failure of the parties to consummate the sale is not attributable to the broker, but to a default of the corporation. See also: Poston v. Buchanan, 203 Okl. 520, 223 P.2d 539; Pfrimmer v. Tidwell, 205 Okl. 262, 236 P.2d 978; Nunn v. Barber, 207 Okl. 393, 249 P.2d 999.

Finally, the last two contentions may be disposed of succinctly. It was not necessary to join as defendants all the shareholders of the corporation, for the officers as trustees may defend the action; and the defendants as trustees for the shareholders, as defendants have always maintained, are likewise authorized to defend for the beneficiaries. 12 O.S.1951 § 223. Neither was it necessary to prove compliance with the intangible tax statute, as the defendants for the first time suggested in their brief herein, for this was an

292

unliquidated claim just as defendants maintained throughout the trial. Watts v. Elmore, 198 Okl. 141, 176 P.2d 220.

Upon the prayer of the defendant in error, judgment is entered herewith against the Seaboard Surety Company, a corporation, incorporated under the laws of the State of New York, surety for appellants, on their supersedeas bond.

Judgment affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., and WILLIAMS, J., dissent in part and specifically as to the determination on the proposition of the intangible tax statute, and in all other respects they concur in the opinion.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was there written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.